## LAWLESS v. SECURITIES & EXCHANGE COMMISSION et al.

### No. 3281.

Circuit Court of Appeals, First Circuit.

April 11, 1939.

Rehearing Denied June 26, 1939.

Daniel J. Lyne, of Boston, Mass. (Lyne, Woodworth & Evarts and Saul L. Kaplan, all of Boston, Mass., on the brief), for petitioner for review.

O. John Rogge, of Washington, D. C., and Howard F. Corcoran, Asst. U. S. Atty., of New York City (Allen E. Throop, Thomas J. Lynch, Milton Katz, and Mayer U. Newfield, all of Washington, D. C., on the brief), for Securities and Exchange Commission.

George A. Brownell, of New York City, and Charles E. Wyzanski, Jr., of Boston, Mass. (Charles A. Coolidge, Jr., and Ropes, Gray, Boyden & Perkins, all of Boston, Mass., and Davis, Polk, Wardwell, Gardiner & Reed, of New York City, on the brief), for intervenor.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is a petition to review an order of the Securities and Exchange Commission. Section 24 (a) of the Public Utility Holding Company Act of August 26, 1935, 49 Stat. 834, 15 U.S.C.A. § 79x(a), provides that "any person or party aggrieved by an order issued by the Commission under this chapter may obtain a review of such order in the circuit court of appeals of the United States within any circuit wherein such person resides or has his principal place of business * * *."

The order was made on the application of the International Power and Paper Company. It concerned the issuing of a report on a reorganization plan for the Power Company changing its capital structure and exempting it from the provisions of Sections 4 (a) (3) and 6 (a) and (c) (1) of the Act, 15 U.S.C.A. §§ 79d(a) (3), 79f(a), (c) (1), and from the necessity of further orders or approval of the future issuance of certain securities pursuant to the plan, in case they were not issued and disposed of within the statutory period of its temporary exemption as an unregistered company, it having previously filed with the Commission an application under Section 3 (a) (5) asking for a permanent exemption from the provisions of the Act, 15 U.S.C.A. § 79c(a, c).

Section 4 (a), 15 U.S.C.A. § 79d(a), provides that, after December 1, 1935, it shall be unlawful for an unregistered holding company directly or indirectly "(3) to distribute or make any public offering for sale or exchange of any security of such holding company, * * * by the use of the mails or any means or instrumentality of interstate commerce," etc.

And Section 6 (a), 15 U.S.C.A. § 79f (a), makes it unlawful for a registered holding company by the use of the mails or any means or instrumentality of interstate commerce "directly or indirectly (1) to issue or sell any security of such company; or (2) to exercise any privilege or right to alter the priorities, preferences, voting power, or other rights of the holders of an outstanding security of such company", except "in accordance with a declaration effective under section 7 [15 U.S.C.A. § 79g], and with the order under such section permitting such declaration to become effective".

The Act requires all holding companies, defined in Section 2 (a) (7), 15 U.S.C.A. § 79b (a) (7), as a condition precedent to the use of the mails or any means or instrumentalities of interstate commerce, to register with the Commission prior to December 1, 1935, unless such company is permanently exempted by order of the Commission pursuant to Section 3 (a), or unless such company is temporarily exempted by reason of the pendency of an application for permanent exemption filed in good faith under Section 3 (c), and then only during the period of temporary exemption can it use the mails or means or instrumentalities of interstate commerce.

At the time the order in question exempting the Power Company from the provisions of Sections 4 (a) and 6 (a) was made, the Commission had not passed upon that company's right to a permanent exemption under Section 3 (a) (5), and it was not then known whether a permanent exemption would be granted on its application or not. At that time the Power Company was an unregistered holding company and one question is whether the Commission had the power and authority to exempt the Power Company from the provisions of Sections 4 (a) and 6 (a) (1) so that it might, after its period of temporary exemption had expired, then issue and put upon the market any of its securities which it had not issued and put upon the market during the period of the temporary statutory exemption, and this, without the necessity of a further order or approval of the Commission, even if the Commission finally determined that the Power Company should not be granted a permanent exemption.

At the time the order was made it could not have been foreseen whether the Com-

mission would or would not grant the Power Company a permanent exemption. Prior to December 1, 1935, the Power Company owned and controlled, among other assets, approximately 97 percent of the voting stock of the International Hydro-Electric System, which in turn owned approximately 88 percent of the New England Power Association. That association, through its subsidiaries, owned, controlled, and operated public-utility properties of an important character throughout the New England states. It then was unquestionably a holding company within the meaning of the Act and, as a consequence, would on or before December 1, 1935, be required to register under its provisions in order to qualify for the lawful sale or distribution of its securities by the use of the mails, etc. On November 29, 1935, it effected an arrangement whereby the voting stock of the New England Power Association was placed in a voting trust to terminate December 1, 1940, and to be administered during that period by three trustees who were to vote the stock to the best of their ability for the benefit of the New England Power Association and for each and every class of its shareholders and other security holders as a whole, with the understanding that, in the exercise of its power to vote, the trustees would be governed solely by their uncontrolled discretion.

On November 30, 1935, the New England Power Association registered with the Commission as a public-utility holding company. The Power Company, however, refused to register, but on December 1, 1935, filed with the Commission an application, dated as of November 30, 1935, for permanent exemption pursuant to Section 3 (a) (5) of the Act, in consequence of which it became, by force of the terms of the Act, temporarily exempt from its provisions, if it filed the application in good faith, until the Commission made a final determination.

The Commission had not passed upon the question of permanent exemption when the petition for review was heard before this court in the spring of 1938, although Section 3 (c) of the Act imposes a duty upon the Commission to do so within a reasonable time after the receipt of the application; nor had it passed upon the question of the company's good faith in filing the application.

Late in 1936 or early in 1937 the Power Company considered it advisable to revise its capital structure. At that time it had outstanding five classes of stock,—Cumulative 7 percent preferred; cumulative 6 percent preferred and classes A, B, C, common. A plan was devised whereby the preferred stock outstanding would be exchanged for a new class of 5 percent cumulative preferred stock and new common stock, and the common stock outstanding would be exchanged for new common stock and common stock purchase warrants. Each share of 5 percent cumulative preferred stock was to carry a right of conversion, at any time on and after October 15, 1937, into two and one-half shares of common stock. The common stock purchase rights were to entitle the holders thereof to purchase a specified number of shares of common stock during the period after March 12, 1937, and terminating May 15, 1942.

In this situation the Power Company on March 12, 1937, filed with the Commission an "Application for Order in Connection with Plan for Change in Capitalization". In this application the Power Company requested (1) a hearing on the plan; (2) a report on the plan "in the manner provided in Section 11 (g) (2) of the Act, 15 U.S.C.A. § 79k(g) (2) [which only applies to a registered company]; (3) for an order of exemption from the provisions of Sections 4 (a) and 6 (a) of the Act in so far as the same apply to the changes in rights of shareholders involved in the plan or the issue, distribution, sale or exchange by the Company of the * * * securities to be issued, distributed, sold, or exchanged pursuant to the provisions of the Plan * * *; (4) that the order of exemption sought should provide that no further order or approval of the Commission would be required in respect of the securities to be issued pursuant to the plan".

A hearing was had on this application on March 12, 1937, and thereafter, on May 5, 1937, the Commission issued a report on the proposed plan, but no order was issued at that time. On June 23, 1937, the report of the Commission was submitted to a meeting of the stock-holders of the Power Company and the proposed plan was adopted. July 15, 1937, a further hearing on the application of March 12, 1937, was had before the Commissioners Landis, Healy, Matthews and Douglas, at which time evidence was introduced and argu-ments made, and, at the close of the hearing, the matters heard under the application, were taken under consideration by the four commissioners. Later, on July 31, 1937, when Commissioner Healy was absent in California, the other three commissioners met and, on that day, by a vote of two to one, entered an order declaring:

"It is ordered that said applicant be and hereby is exempt from the provisions of Sections 4(a) and 6(a) and all other applicable sections of said Act in so far as the same apply to the issue, distribution, sale or exchange by said applicant pursuant to and in accordance with the provisions of said plan, of the following securities:

"1. all shares of common stock which may be issued pursuant to said plan upon the conversion of shares of 5 per cent. cumulative convertible preferred stock which, under the plan will result from the change in said company's now outstanding cumulative 7 per cent. stock and cumulative 6 per cent. preferred stock;

"2. all shares of common stock which may be issued pursuant to said plan upon the exercise of common stock purchase warrants which, under the plan, will result from the change in said company's now outstanding Class A, Class B and Class C common stocks.

"It is further ordered that no further order or approval of the Commission be required with respect to the above securities, whether or not the Commission takes favorable action on a certain application dated as of November 30, 1935, whereby said company applied for exemption under Section 3 (a) of said Act and which said application is now pending before this Commission."

September 9, 1937, the petitioner, Lawless, applied for a rehearing on the application of the Power Company filed March 12, 1937. At this time Mr. Landis had ceased to be a member of the Commission. The three members of the Commission who heard the application for rehearing were Commissioners Douglas, Healy and Matthews. Commissioner Ross did not sit, he not having participated in the hearing of July 15, 1937.

A rehearing having been denied, Lawless, as a stockholder of the Power Company, filed his petition for review in this court of the above order of July 31, 1937 and in paragraphs 18 and 19 thereof set forth a statement of the errors intended to be relied upon, all of which he had previ-

ously urged in the way of objections at the hearing before the four commissioners on July 15, 1937, as required in Section 24 (a) of the Act.

It further appears that at the hearing before Commissioners Landis, Healy, Matthews, and Douglas, on July 15, 1937, the petitioner, John J. Lawless, Jr., the owner of five thousand shares of Class C common stock of the Power Company, was allowed to appear in opposition to the application of March 12, 1937, the same as he had been allowed to appear at the previous hearing on the same application.

It is apparent from a reading of the Act that its benefits are conferred upon holding companies that have registered under Section 5, 15 U.S.C.A. § 79e, and complied with the other requisite provisions of the Act; that Section 4 (a) (3) expressly makes it unlawful after December 1, 1935, for a holding company, not registered under Section 5, to directly or indirectly "distribute or make any public offering for sale or exchange of any security of such holding company * * * or to sell any such security having reason to believe that such security, by the use of the mails or any means or instrumentality of interstate commerce, will be distributed or made the subject of a public offering", unless sold and disposed of during the statutory period of partial exemption, etc.

Section 11 (g) makes it unlawful for even a registered holding company "to solicit or permit the use of his [or its] name to solicit, by the use of the mails or any means or instrumentality of interstate commerce, or otherwise, any proxy, consent, authorization, power of attorney, deposit, or dissent in respect of any reorganization plan, * * * unless (1) the plan has been proposed by the Commission, or the plan and such information regarding it and its sponsors as the Commission may deem necessary or appropriate in the public interest or for the protection of investors or consumers has been submitted to the Commission by a person having a bona fide interest * * * in such reorganization" and unless "(2) each such solicitation is accompanied or preceded by a copy of a report on the plan which shall be made by the Commission after an opportunity for a hearing on the plan," etc.

And Section 6 provides that it shall be unlawful for a registered holding company, "except in accordance with a dec-laration effective under section [79g] 7 and with the order under such section permitting such declaration to become effective * * *" "by use of the mails or any means or instrumentality of interstate commerce, or otherwise, directly or indirectly (1) to issue or sell any security of such company; or (2) to exercise any privilege or right to alter the priorities, preferences, voting power, or other rights of the holders of an outstanding security of such company."

It was in violation of the express provision of Section 4 (a) that the Commission by its order authorized the Power Company, an unregistered holding company, to distribute and make public offering for the sale or exchange of its securities by the use of the mails or any means or instrumentality of interstate commerce after the period of temporary statutory exemption had expired, free from any legal liability imposed by the Act.

The Act contemplates that a registered company and a registered company only, which has complied with the provisions of the Act, shall be entitled to its benefits and that unregistered companies shall not. And so viewing the statute we hold that the Commission was without power or authority to issue the order in question wherein it exempted the Power Company from the provisions of Sections 4 (a) and 6 (a) "and all other applicable sections of the Act, etc."

The intervenor, the Power Company, also contends that the petitioner, Lawless, Jr., has no standing entitling him to prosecute this petition for review, and that the petition for that reason should be dismissed. The record, however, shows that he was allowed by the Commission to appear as a party contesting the application of the Power Company; that he appeared by counsel, introduced evidence and cross-examined witnesses, and no objection was raised by the Power Company to his being joined as a party permitted to contest the application. In Section 19 of the Act, 15 U.S.C.A. § 79s, it is provided that "in any proceeding before the Commission, the Commission, in accordance with such rules and regulations as it may prescribe, * * * may admit as a party any representative of interested consumers or security holders, or any other person whose participation in the proceedings may be in the public interest or for the protection of investors or consumers." The petitioner, Lawless,

Jr., was a holder and owner of shares of stock in the Power Company, and was aggrieved by the order, which was adverse to his contention in opposition to the application of March 12, 1937, on which the order of July 31, 1937, was made and which tended to cast doubt on the validity and legality of the new common stock and common stock purchase warrants that would be issued to him in the event that the Commission should thereafter find that the original application of the Power Company of November 30, 1935, should be denied.

As our decision of the questions above passed upon decides this case, it is unnecessary to consider whether the order is also invalid because only three members of the Commission participated in the decision and order in question and only two concurred therein, four members having heard the evidence and arguments and taken the case under consideration for their decision.

The order of the Commission of July 31, 1937, is vacated and the cause is remanded to the Commission for further proceedings not inconsistent with this opinion.