325 U.S. 385 (1945)
AMERICAN POWER & LIGHT CO.
v.
SECURITIES & EXCHANGE COMMISSION.
No. 470.
Supreme Court of United States.
Argued April 26, 1945.
Decided June 4, 1945.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.[*]
*386 Mr. R.A. Henderson, with whom Mr. A.J.G. Priest was on the brief, for petitioner in No. 470.
Mr. Roger S. Foster, with whom Solicitor General Fahy and Mr. Milton V. Freeman were on the briefs, for the Securities & Exchange Commission.
Mr. Samuel Okin for respondent in No. 815.
MR. JUSTICE ROBERTS delivered the opinion of the Court.
We granted certiorari in these cases because of an apparent conflict in the decisions below[1] concerning the application of § 24 (a) of the Public Utility Holding Company Act,[2] which provides that "any person or party aggrieved by an order issued by the Commission" under the Act may obtain a review of the order by the Circuit Court of Appeals of the circuit of his residence or principal place of business. The difference of view is as to the scope of the phrase "person or party aggrieved."
In No. 470 it appears that the petitioner is a registered holding company and owns all the common stock of the Florida Power & Light Company. The paragraphs of the order in controversy require Florida to make certain accounting entries which will result in taking out of surplus moneys which would otherwise be available to pay *387 dividends to petitioner. The order including these paragraphs was made as the result of proceedings before the Commission to which American and Florida were parties, and in which American participated; and the provisions in controversy appear to have been drawn with a view that they might be contested apart from other matters before the Commission, and to have included statements to the effect that they were made without prejudice to the rights of American and Florida to contest them.
American petitioned the court below to set aside the order. Later Florida petitioned another Circuit Court of Appeals to set aside the same paragraph attacked by American. The Commission moved to dismiss American's petition, reciting the fact that Florida had instituted a similar proceeding, and asserting that American, as sole stockholder, had no standing to seek review of the order.
In No. 815 it appears that Electric Bond & Share Company, a registered holding company, loaned $35,000,000 to a subsidiary, American and Foreign Power Company, which is also a registered holding company, and that the question of how this loan should be refinanced became the subject of a proceeding before the Commission.
The respondent, Okin, as the owner of 9,000 out of a total of some 5,250,000 common shares of Electric Bond and Share, was allowed to participate in the proceeding, and opposed a proposition which the two companies submitted for a method of refinancing the loan. The Commission made an order approving the proposal; and Okin thereupon petitioned the court below to review the order. The gist of his complaint was that the refinancing as approved would reduce the value of his stock by reducing the interest income of Electric Bond and Share.
*388 The Commission, before filing a certified copy of the transcript of the record upon which the order complained of was entered, moved to dismiss Okin's petition upon two grounds. The first was that, within the meaning of § 24 (a), Okin was not a person or party aggrieved. The second was that his objection to the order was frivolous. In response to this the court held that, while it might well be that Okin's attack lacked merit, if it did the result should be an affirmance of the order rather than a dismissal of the proceeding, and that jurisdiction to consider the merits was lacking in the absence of a transcript of the proceedings before the Commission. The motion was accordingly denied.
The Commission alleges that subsequently it filed a motion to dismiss or affirm, after having filed an abbreviated transcript containing so much of the record as was relied on for the purposes of the motion, and that this motion was denied without opinion. The record shows that a motion to dismiss or affirm was denied without opinion.
The Commission asks us to review both denials. The respondent insists we lack jurisdiction so to do, for the reason that neither order is final.
First. We hold that a stockholder having a substantial financial or economic interest distinct from that of the corporation which is directly and adversely affected by an order of the Commission, irrespective of any effect the order may have on the corporation, is a "person aggrieved" within the meaning of § 24 (a).
The Commission does not question that American, as sole stockholder of Florida, has a substantial economic interest which is affected by the order; nor does it maintain that the term "person aggrieved" is not broad enough to include one whose economic interest is affected by an order affecting his company under circumstances which make it inequitable that he be bound by the action or *389 inaction of the management. It insists, however, that American's application for review in the court below was in the nature of a derivative action, commonly designated a stockholder's suit, to redress a wrong to his corporation. In this view, the Commission urges that, as Florida has itself sought a review of the order, it must be presumed that Florida will endeavor to protect the interest of its sole stockholder, American, and that American has consequently failed to show any necessity for its representing the interests of Florida.
The difficulty with this contention is that the action of the Commission in ordering the transfer of an item from surplus account to another account where the item will not be available for the payment of dividends does not deprive the corporation of any asset or adversely affect the conduct of its business in the manner it affects the petitioner, whereas the order has a direct adverse effect upon American as a stockholder entitled to dividends. It was because the court below overlooked this difference that it found support for its decision in Pittsburgh & West Virginia R. Co. v. United States, 281 U.S. 479. That was a suit brought under the Urgent Deficiencies Act to set aside an order of the Interstate Commerce Commission addressed to a carrier other than the plaintiff in the suit. The plaintiff was a minority stockholder of the carrier affected. This court pointed out that, under the accepted doctrine, the plaintiff had no standing to sue since in attempting to do so it was merely seeking, in a derivative capacity, to vindicate the rights of the corporation.
In awarding a review of an administrative proceeding, Congress has power to formulate the conditions under which resort to the courts may be had.[3] The persons accorded *390 a right to obtain review are, therefore, to be ascertained from the terms of the statute. Congress might here have provided that only parties to the administrative proceeding should have standing to obtain court review. When the bill which became the Public Utility Holding Company Act was introduced in the houses of Congress it provided that "any person aggrieved by an order issued by the Commission in a proceeding under this title to which such person is a party may obtain a review of such order."[4] The provision was altered so as to read as it is now found in the statute. There seems to be no reason not to accord the statutory language its natural meaning in a case such as this, where the considerations which would move the corporation to seek review differ from those which may be relevant to the stockholder's interests. There may be situations in which the two interests are the same and where consequently the grievance ought not to support two proceedings identical in character. This, however, is not such a case; for it is possible that without any legal wrong to stockholders the corporation may elect not to prosecute, or to abandon, a proceeding for review.
This court has not allowed the usual criteria of standing to sue to deny persons who, in analogous cases under that doctrine, would ordinarily not be permitted to invoke court review, the benefit of such review under statutes embodying the same language as § 24 (a).[5] The same is true of the lower federal courts.[6] In these instances *391 the extension of the privilege to persons aggrieved was held to extend it to those not technically parties, and, therefore, not entitled, without the statutory provision, to initiate litigation in a court.
While the matter was not specifically mooted, it would seem that, until the instant cases, both the Commission and the courts have been of the view that persons situated as are the stockholders in these cases were given the statutory right to apply for review of a Commission order. In Circuit Courts of Appeals, and in this court, stockholders have been heard upon the merits of orders made against corporations by the Securities and Exchange Commission.[7]
The further suggestion is made that to permit stockholders to resort to court review would create unnecessary inconvenience and expense since a stockholder entitled to apply to a court may go to the Circuit Court of Appeals of the circuit in which he resides or has his principal place of business. Thus, it is urged, the Commission might be called upon to answer suits in various circuits. But § 24 (a) provides that the Commission may file a transcript of its proceedings in any circuit in which a proceeding has been initiated and thereupon the court in which the transcript is filed shall have exclusive jurisdiction. Thus, if the Commission had here elected to file a transcript in the Circuit Court of Appeals where Florida applied for review, the Circuit Court of Appeals for the First Circuit, in which American's petition was filed, should have transferred that petition to the other court and all the complaints would have been heard by a single court and on the same record.[8]
*392 Second. In No. 815, the court below held the respondent had standing to maintain the proceeding for review of the Commission's order. In this case, Okin, as a stockholder, attacked the transaction made by his company with its subsidiary on the grounds that it was both illegal and fraudulent. His corporation urged that the Commission approve the transaction, thus taking a position adverse to him. His application for review of the Commission's order approving the settlement was, therefore, in the nature of a derivative or stockholder's action. Inasmuch as he charged illegality and fraud, it is evident that application to the Board of Directors would have been futile. Under the Commission's own view, therefore, the Circuit Court of Appeals was right in denying a dismissal of the proceeding for lack of standing on the part of Okin to initiate it. But, as above stated in the decision of No. 470, we do not deem it essential that the proceeding have the character of a derivative suit.
The Commission urges us to hold that the petition on its face presents only frivolous contentions. The court below was unwilling to dismiss on this ground, holding that a more appropriate order would be one of affirmance. It required that the record be filed, as required by the Act, as a condition of consideration of this matter. Apparently it was not satisfied that the filing of an abbreviated transcript furnished a basis for affirmance. The Commission, without inordinate delay or additional expense, might have filed the full transcript of the proceedings before it and obtained the judgment of the court on the adequacy of the petition. We think we are not called upon to examine the merits of the Commission's contentions or to reverse the decision denying the motion to dismiss, or that denying the motion to dismiss or affirm. The court below has discretion to deal with the problem of the necessity of a record, and the extent thereof, in connection *393 with a motion to dismiss or affirm on the ground that the petition for review is frivolous.
In No. 470 the judgment is reversed.
In No. 815 the judgment is affirmed.
MR. JUSTICE DOUGLAS took no part in the consideration or decision of these cases.
MR. JUSTICE BLACK and MR. JUSTICE REED concur in the result in No. 815.
MR. JUSTICE MURPHY, dissenting.
Fifteen years ago this Court was confronted with an attempt by a corporate stockholder to set aside an order of the Interstate Commerce Commission on the claim that the order threatened the financial stability of the corporation to which it was directed as well as the "appellant's financial interest as a minority stockholder." The Court, speaking through Mr. Justice Brandeis, held that the stockholder had no standing to maintain the suit since "the order under attack does not deal with the interests of investors" and the only injury feared "is the indirect harm which may result to every stockholder from harm to the corporation." Pittsburgh & West Virginia R. Co. v. United States, 281 U.S. 479, 487. That holding, in my estimation, disposes of this attempt by the American Power & Light Company to obtain an independent judicial review of an order of the Securities and Exchange Commission directed at a company in which it is the sole stockholder.
Section 24 (a) of the Public Utility Holding Company Act allows "any person or party aggrieved by an order issued by the Commission" to obtain a review of such order in an appropriate Circuit Court of Appeals. The test, then, is whether American was "aggrieved" by the Commission's order in this instance. Since the term "person or party aggrieved" is not defined in the Act we can *394 only assume that its meaning is to be drawn from traditional legal principles and from any relevant statutory policies.
Only two paragraphs of the Commission's order are in issue. They are directed solely to the Florida Power & Light Company, all of whose securities are owned by American. These paragraphs fail even to mention American; they neither require nor prohibit any action by it. Nor do they in any way affect American's rights as a stockholder. They simply require Florida to make certain accounting adjustments in the form of charges to earned surplus. Since dividends are paid from earned surplus and since these requirements will decrease the earned surplus account, the Court reasons that "the order has a direct adverse effect upon American as a stockholder entitled to dividends." From this it is concluded that American is "aggrieved" by the order. To that reasoning and conclusion I cannot agree.
1. There is no evidence in the record to justify the assumption that the items to be charged to surplus would necessarily have been available for distribution as dividends to American or that the surplus was otherwise inadequate to pay the normal amount of dividends. Florida might well have retained these items for reinvestment in the business, thus making them unavailable for dividend distribution. Moreover, to the extent that Florida retains these items in its capital structure, American's ultimate equity in the organization is increased. It cannot be said, therefore, that American has been adversely and permanently affected by this order.
2. But even if it were clear that the order would necessarily restrict dividend payments it does not follow that the restraint so directly affects American as to entitle it to challenge the order as a person "aggrieved." It has long been established that ordinarily the mere accumulation of an adequate surplus does not entitle a stockholder *395 to dividends until the directors, in their discretion, declare them. Southern Pacific Co. v. Lowe, 247 U.S. 330. And until such a declaration is made the directors are free to deal with that surplus in good faith as they may see fit in the exercise of their business judgment, the stockholders not having sufficient interest in undeclared or potential dividends to challenge such action. See Wabash R. Co. v. Barclay, 280 U.S. 197. The stockholders' interest in such matters, in other words, is indistinct from that of the corporation prior to an actual declaration. Thus if the Florida management had made the same accounting adjustments as those ordered by the Commission in this case American would not be sufficiently "aggrieved" to attempt to prevent Florida from making such adjustments, even though dividend payments might be adversely affected. No adequate reason is evident from the facts or from the opinion of this Court as to why American is any more directly or adversely "aggrieved" when the accounting adjustments are ordered by the Commission rather than by Florida's management or as to why any different results should follow. The impact of the adjustments in either instance is presumably to strengthen the financial structure of Florida; that they may have the incidental effect of decreasing dividends temporarily has never heretofore been sufficient to entitle a stockholder to challenge the adjustments.
3. The fact that American is trying to appeal an administrative order rather than to institute an original action against Florida's management is irrelevant under the circumstances. The Commission's order does not deal with the rights of stockholders as such, in which case a stockholder clearly could appeal from the order. Securities & Exchange Commission v. Chenery Corp., 318 U.S. 80; Lawless v. Securities & Exchange Commission, 105 F.2d 574; New York Trust Co. v. Securities & Exchange Commission, 131 F.2d 274; City National Bank & Trust *396 Co. v. Securities & Exchange Commission, 134 F.2d 65. See also Otis & Co. v. Securities & Exchange Commission, 323 U.S. 624. Nor is there any charge of fraud or breach of duty on the part of Florida, from which it could be argued that American should be given the right to appeal since Florida might not act to protect American's legitimate interests. Indeed, such a possibility is expressly negatived by the fact that Florida has already appealed the Commission's order to another court and is urging precisely the same considerations that American seeks to present in this proceeding. In view of American's complete control of Florida through stock ownership there is no danger of conflicting interests arising between the two companies in the other proceeding. There is thus no basis for concluding that the economic interest asserted by American cannot or will not be adequately protected by Florida. Cf. Federal Communications Commission v. Sanders Bros. Radio Station, 309 U.S. 470; Associated Industries v. Ickes, 134 F.2d 694, dismissed as moot, 320 U.S. 707. The inevitable logic of the facts of this case leads straight back to the conclusion that American's grievance is only "the indirect harm which may result to every stockholder from harm to the corporation." Pittsburgh & West Virginia R. Co. v. United States, supra, 487. That conclusion calls for a dismissal of American's attempted appeal from the Commission's order just as it would call for a dismissal of any suit brought by American against Florida on these facts.
4. The Court's conclusion here leads only to unfortunate consequences in the judicial review of administrative orders. If the remote economic interest asserted by American is sufficient to institute a review proceeding such as this there is no limit to which minority stockholders may harass the Commission and their respective corporations by challenging orders of the Commission directed to the corporations. It is no answer that *397 § 24 (a) gives exclusive jurisdiction to the court in which the Commission files the transcript of a particular proceeding. That provision clearly envisages two or more appeals in different courts by persons who are legally "aggrieved" by a Commission order and who can obtain adequate relief only by individual appeals. But under this decision stockholders are now free, whenever they feel that their potential dividends are affected by Commission action directed to the corporation's accounting entries against which dividends are charged, to appeal regardless of the management's wishes in the matter and regardless of the management's ability to protect their interests fully and fairly. Stockholders in effect supplant the management in deciding whether to appeal from administrative action affecting such internal accounting procedure of the corporation, a problem which until now was exclusively and properly within the domain of the corporate directors and officers. Many stockholders are not in a position to know the intricacies of modern corporate accounting or the proper attitude to take, from the corporation's point of view, as to the challenged administrative action. But now they have been given carte blanche to proceed as they desire. It is difficult to believe that Congress intended such consequences to flow from its use of the word "aggrieved" in § 24 (a).
Finally, I dissent from the Court's disposition of the writ in the Okin case. It is no doubt true, as the Court states, that an assertion that a transaction approved by the Commission was fraudulently entered into by the corporation is sufficient to entitle the stockholder to an independent review of the Commission's action. But it does not follow that the mere cry of "fraud" is sufficient. There must be some bona fide basis appearing on the face of so serious a charge. Here, however, Okin merely charges that (1) a Maine corporation is not subject to the Commission's jurisdiction because its subsidiaries operate *398 outside the United States; (2) the particular transaction in issue is detrimental to Okin's interests as a stockholder inasmuch as the management extended a note of a subsidiary at a reduced interest rate; (3) various corporate officers held conversations with each other and with members of the Commission's staff; (4) his constitutional rights have been invaded; and (5) the transaction is void for failure to comply with § 20 of the New York Stock Corporation Law. Such frivolous claims of fraud are insufficient to warrant making an exception to the general rule that a stockholder cannot appeal an administrative order which involves only the corporation as such.
MR. JUSTICE BLACK and MR. JUSTICE REED join in that part of this dissent dealing with No. 470, the American Power & Light Co. case.
NOTES
[*] Together with No. 815, Securities & Exchange Commission v. Okin, on certiorari to the Circuit Court of Appeals for the Second Circuit.
[1] American Power & Light Co. v. Securities & Exchange Commission, 143 F.2d 250; Okin v. Securities & Exchange Commission, 143 F.2d 945.
[2] 15 U.S.C. 79 x.
[3] Federal Power Comm'n v. Pacific Power & Light Co., 307 U.S. 156, 159.
[4] Senate Bill No. 1725, 74th Cong., 1st Sess., § 24 (a); House Resolution No. 5423, 74th Cong., 1st Sess., § 23 (a).
[5] Interstate Commerce Commission v. Oregon-Washington R. & N. Co., 288 U.S. 14 (the Interstate Commerce Act); Federal Communications Comm'n v. Sanders Bros. Radio Station, 309 U.S. 470 (Communications Act); cf. L. Singer & Sons v. Union Pacific R. Co., 311 U.S. 295.
[6] Associated Industries v. Ickes, 134 F.2d 694 (the Bituminous Coal Act).
[7] Lawless v. Securities & Exchange Commission, 105 F.2d 574; Todd v. Securities & Exchange Commission, 137 F.2d 475; cf. Northwestern Electric Co. v. Federal Power Commission, 321 U.S. 119.
[8] L.J. Marquis & Co. v. Securities & Exchange Commission, 134 F.2d 335; L.J. Marquis & Co. v. Securities & Exchange Commission, 134 F.2d 822.