672

PUBLIC UTILITY DISTRICT NO. 1 OF
DOUGLAS COUNTY, STATE OF
WASHINGTON, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,

Public Utility District No. 1 of Che-
lan County, State of Wash-
ington, Intervenor.

No. 15347.

United States Court of Appeals
Ninth Circuit.

Feb. 28, 1957.

As amended March 5, 1957.

Kimball & Clark, Waterville, Wash., for petitioner.

Howard E. Wahrenbrock, Asst. Gen. Counsel, and John Mason, Washington, D. C., for respondent.

Before DENMAN, Chief Judge, and POPE and FEE, Circuit Judges.

POPE, Circuit Judge.

The Federal Power Commission issued to Public Utility District No. 1 of Chelan County, Washington, here called Chelan, a license under § 4(e) of the Federal Power Act, Title 16 U.S.C.A. § 797(e), for the construction and operation of what was designated as the Rocky Reach Hydroelectric Power Project on the Columbia River. Public Utility District No. 1 of Douglas County, Washington, here called Douglas, holder of a preliminary permit for a power site known as the Wells Project, some 40 miles upstream from the Rocky Reach site, intervened in the proceedings before the Commission, and filed a protest seeking limitations in the proposed license which would protect the Wells site from the effects of encroachment of the pool for Rocky Reach on the natural tailwater at Wells. The order granting the license was made July 12, 1956, and as its terms did not meet the demands of petitioner's protest, it made application for rehearing within the 30 day period provided by the stat-

ute. Rehearing was denied and the present petition to review the order granting the license was filed in this court.[1] Now before us is a motion of the Power Commission and Chelan to dismiss the petition and also the counter motion of Douglas asking this court forthwith to modify the order of the Commission and the license issued thereunder so as to conform to demands made by petitioner in respect to compensation for loss of head at that site.

The motion to dismiss the petition is based upon two grounds. The first is based on the fact that petitioner, after asking leave to intervene in the proceedings, filed what the Commission calls "an harmonious agreement", and what petitioner calls a "press release", the effect of which, the Commission argues, was to waive any right of the petitioner to a hearing before the Commission prior to the issuance of the order for the license. The Commission says that it was because of the filing of that document that instead of proceeding in the usual manner and giving notice and holding a hearing upon the application for a license, it proceeded to issue a decision and to authorize the license. The provisions of the order and the terms of the license were arrived at through a consideration by the Commission of data which had been compiled by the Commission's staff. The Commission makes the point that since it proceeded without a hearing in reliance upon this document filed by the petitioner, and since there was no record in the usual sense of that term, no record of the evidence upon which the Commission acted is available for certification for review. All this, the Commission says was induced by the petitioner's own act in filing the document which was thus treated as a waiver of hearing or right to be heard.

The second reason given for the requested dismissal is that although petitioner made application for rehearing within the time allowed by § 313 of the Federal Power Act, 16 U.S.C.A. § 825l, yet that application failed to specify any ground or grounds upon which a petition for review can be based or upon which this court may act.[2] In particular the Commission points out that the application for rehearing simply asserted that that part of the Commission's order incorporated in article 42 of the license specifying the amount of power to be delivered by Rocky Reach to the future Wells project, was inadequate in substance; further, that in the absence of a complete record and without the evidence on which the Commission based its order on this point, this court can never review or pass upon the propriety of the substantive provisions of article 42;[3] and,

1. For the provisions authorizing review of such orders, see Title 16 U.S.C.A. § 825 (l) and Title 5 U.S.C.A. § 1009.

2. Subdivision (b) of that section provides: "No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do."

3. Says the Commission's motion: "Because of petitioner's representations, the Commission did not have a stenographic record made of the informal conversations the parties had with staff members, or formally define or record all the basic data considered or the opinions and recommendations of staff engineers or other technical experts which entered into the result. Without a formally defined record and without any report of what passed orally between the staff and the parties, petitioner is of course not advised of all the evidence—the basic data and the opinions and recommendations of the technical experts of the Commission and of the applicant for license—which would have been formally recorded if there had been a hearing. Hence by consenting to this procedure, which it induced the Commission to follow, and by waiving hearing, petitioner has itself brought about the very situation in which it finds itself."

Article 42 reads as follows: "Article 42. The Licensee shall make available an amount of power and energy to the owner of the Wells project, after the Wells project is constructed and in operation, equal to one-half of that lost at the Wells project resulting from the headwater of the Rocky Reach project encroaching on the natural tailwater of the Wells project; Provided, however, that the amount of such power and en-

that since petitioner was responsible for this lack of a formal record, the objections contained in its application for rehearing are wholly insufficient to supply any basis for review in this court,—particularly since the application fails to challenge the propriety of the Commission's treatment of the document filed as a waiver of a hearing, and fails to make any complaint as to any procedural irregularities before the Commission.

It appears from the showing made here that Chelan made application for the license for the Rocky Reach project on January 13, 1956. On March 22, 1956

Douglas filed its protest and petition for intervention.[4] The protest was amended in certain particulars about the 15th of May, 1956, but no action upon the application for leave to intervene had been taken by the Commission when on June 22, 1956, it received a letter from the commissioners of each of the two public utility districts enclosing a joint statement signed by both. The letter and the statement make up the document previously referred to and called the "harmonious agreement" or the "press release" depending upon which party refers to it. The letter and the joint statement are set forth in the margin.[5]

ergy shall not exceed 22,500 kilowatts and 175,000,000 kilowatt-hours annually."

4. The prayer of that petition was as follows: "Wherefore, Petitioner prays:

"1. That it be permitted to intervene in the proceedings on Project No. 2145, and be authorized to participate therein;

"2. That no license issue to Chelan until Petitioner has had reasonable time to complete its investigations and determine the most economic site for its Project No. 2149, including relations of Project No. 2145 thereto;

"3. That if a license is granted to Chelan, the Commission require modification of the plans and specifications so that the pool elevation will be lowered and there will be no interference with the natural tailwater at the most economic site for Project No. 2149;

"4. That, in the alternative, if a license be granted to Chelan allowing a tailwater interfering with said natural tailwater of Project No. 2149, the licensee be required therein to compensate the licensee under Project No. 2149 by furnishing electric energy equal in time and amount to that lost by the encroachment on said natural tailwater;

"5. That, in the alternative, application by Chelan for license for Project No. 2145 be denied."

5. "Received Jun 22 9:43 AM '56—
Federal Power Commission
Wenatchee, Wash.
June 19, 1956

"Federal Power Commission
"Washington, D.C.

"Dear Sirs: At a joint session of the commissioners of both the Douglas and Chelan county public utility districts, we have adopted the enclosed harmonious

agreement; also both commissions expressed the hope that the Federal Power Commission will make an early decision on the application for a license on Rocky Reach dam.

"The Northwest is short of power; the start of Rocky Reach this year is impossible unless such decision is immediately forthcoming.

"Very truly yours,
"Commissioners, Douglas County
Public Utility District
/s/ Geo. D. Hamilton
/s/ Grady Auvil
/s/ Bryan Thomsen
"Commissioners, Chelan County
Public Utility District
/s/ L. J. Richardson
/s/ Ivan J. Compton
/s/ Harold M. Watson"

"Received
"June 22 9:43 AM '56
"Federal Power Commission
"Joint Statement—Commissioners of
Douglas and
"Chelan County
"Public Utility Districts

"Since there is much interest and concern by all the people of this area, as well as by others throughout the state as to the progress of plans for the building of Rocky Reach and Wells dams, the Commissioners of both Chelan and Douglas County Public Utility Districts feel a joint statement would be helpful in clarifying the status of the projects at this time.

"The Commissions of each district fully realize the importance of early licensing and construction of both dams since both are vital to the full development of this area. Not until they are licensed and developed are their future economic bene-

Of the joint statement petitioner states that it was no more than a press release issued for the purpose of assuring the public, which was interested in power development on the Columbia River, that both districts were desirous of obtaining quick action. At any rate, the document appears to have been prepared by the commissioners themselves, all laymen. Ten days after the date of the joint statement, and on June 29, 1956, petitioner's counsel, who had not been consulted with respect to the statement, sent a further letter to the Power Commission characterizing the written instrument as a "news release" which "may accurately state their intentions as individuals," yet it was "not an official act" of the district and "should not be construed as a waiver of any rights of our district in the matter." The contents of that letter are set forth in the margin.[6]

No further inquiry respecting this matter was addressed by the Commission to the would-be intervenor, Douglas, and thereafter without hearing or other public proceedings, and on July 12, 1956, the Commission made its order granting the license to Chelan. On the same day the

Commission granted petitioner's leave to intervene.

■ With respect to the Commission's contention that the so-called "joint statement" constituted a waiver of petitioner's right to be heard, and its further contention that petitioner cannot in this court make any claims to the contrary, we find little difficulty in concluding that the Commission should not have so treated the document, and that petitioner may properly so contend here. Viewed in its entirety, the statement would appear to be no more than an expression of good intentions and of a desire to be helpful. As received by the Commission, it lacked the appearance or form which was customarily required in respect to pleadings or documents of importance. If the Commission is right, then here was a document having the serious consequence of waiving the hearings to which the parties would otherwise be entitled, yet under the rules of the Commission, (C. F.R.Title 18, § 1.15), pleadings, documents, or other papers filed with the Commission are required to show the docket designation and title of the proceedings and the Commission is to be

---

fits secure to the people of our area. However, the final decision of how and where they are built (and amount of compensation) rests with the Federal Power Commission, regardless of any agreements that might be made between Chelan and Douglas. In recognition of this regular process of Federal licensing of all such projects, both P.U.D.'s are cooperating to the fullest in supplying all information to the Federal Power Commission that might be helpful in their arriving at an early decision. Recognizing the importance to our districts of an early decision, it is the intent of both utility districts that we accept and abide by the decision of the Federal Power Commission. Further, it is our intention to maintain an harmonious and active working relationship toward development of our water resources to the joint interests of both districts.

"/s/ Geo. D. Hamilton
"/s/ Grady Auvil
"/s/ Bryan Thomsen
"/s/ L. J. Richardson
"/s/ Ivan J. Compton
"/s/ Harold M. Watson"

6. "Confirming our telephone conversation of Friday, June 29, 1956, I would like to re-state the position of Douglas County P.U.D. with relation to the so-called 'Agreement' dated June 19, 1956, which was reached between the Commissioners of Douglas County P.U.D. and Chelan County P.U.D. on the Rocky Reach License Application.

"The written instrument was in the form of a news release signed by the Commissioners of the two districts, and although it may accurately state their intentions as individuals, it was not an official act of the Douglas County P.U.D. and should not be construed as a waiver of any rights of our district in the matter.

"If you feel that further clarification of this situation would be helpful to your Commission, we should be happy to appear at your convenience to give any further information you may request.

"Yours very truly,
"Kimball & Clark
"By
Ned W. Kimball
Attorneys for Douglas County
P.U.D. #1."

furnished with an original and 19 conformed copies. Mimeographed, multigraphed, hectographed or planographed copies are acceptable if clearly legible. Other rules relating to waiver of certain portions of the usual hearing process specified the contents of the waiving documents in minutest detail. (§ 1.30(c)). In the light of those rules it appears somewhat odd that the Commission would choose to treat what on its face is but an ordinary letter and an enclosed joint statement of good intentions as a formal waiver of hearing.

But wholly apart from the contents and form of the instrument as received by the Commission, it was advised with reasonable promptitude by counsel for the petitioner that the document was not an official act and should not be construed as a waiver; and certainly from the time that communication was received the Commission was not warranted in treating the instrument as a waiver of the right to hearing. The date of the receipt of that letter is not disclosed otherwise than by the showing that it was posted on June 29, 1956. On the date of its receipt, the Commission had before it petitioner's application for leave to intervene and its protest. Then and from then on it was certainly demanding a hearing.

With respect to petitioner's right to have us consider its contention that the Commission erroneously treated the document in question as a waiver of a right to a hearing, it must be noted that petitioner was not advised that the Commission put that interpretation upon that document at the time when its application for a rehearing was filed. It was not until the Commission's order denying the application for rehearing on September 7, 1956, that it was made apparent that the Commission was taking this unauthorized view and treating the document as a waiver.[7]

Thus petitioner had no knowledge when it made its application for rehearing that the Commission took this unwarranted view of the joint statement as having amounted to a waiver. The requirement that an objection cannot be considered by the court unless it has been urged in the application for rehearing is subject to the express exception: "Unless there is reasonable ground for failure so to do." Fed.Power Act, § 313(b), Title 16 U.S.C.A. § 825*l*(b). We think that the failure to make the point of the Commission's misconstruction of the joint statement in the rehearing application comes within the stated exception.

Our next inquiry is whether assuming there was no waiver of a right to a hearing prior to the date of the Commission's order granting the license, the petitioner has brought here a record upon which this court is authorized to grant any effective relief. After the application for rehearing, and pending action thereon, petitioner submitted to the Com-

---

7. Apparently the Commission accepted Chelan's claim to that effect. The application for rehearing was filed August 10, 1956. On August 17, 1956, Chelan, answering this application, stated: " '3. That the joint letter addressed to the Commission under date of June 19, 1956, by the Commissioners of Douglas and the Licensee, together with the joint statement attached thereto, constituted a waiver by Douglas of a hearing before the Commission on the Licensee's application for license and likewise constituted a waiver of any right to a rehearing, assuming, but not admitting that such right of rehearing otherwise existed.' "

In the order denying the application for rehearing dated September 7, 1956, the Commission, after commenting to the ef-

fect that the Commission's duty to provide a comprehensive development of the water resources involved could not be effected by stipulation of the parties, said: " * * * This is expressly recognized in an 'harmonious agreement' dated July 19, 1956 between the two parties and filed with us on June 22, 1956. In this agreement each of the Districts further recognized the importance of 'an early decision on the application for a license on Rocky Reach dam', and express their intent to accept and abide by the decision of the Commission with respect to the 'amount of compensation' the Licensee should pay a future developer of the Wells project for encroachment by Rocky Reach pool on the upstream Wells site."

mission engineering data for the purpose of disclosing that the power allowances in Article 42 were inadequate. In its order denying the rehearing the Commission found that the data thus submitted was on its face insufficient to call for any different result in Article 42, and that the data furnished no factual basis for a change in that article.

It seems plain that if the petitioner is aggrieved, its basis for complaint goes beyond the mere denial of a rehearing. Had a rehearing been granted and petitioner been permitted to produce witnesses and to furnish engineering data in support of the allegations asserted in its petition for rehearing, the record of such a rehearing would not have furnished a basis upon which this court could review the Commission's order upon the merits, for what would be lacking would be the evidence and statistical data which the Commission used to support its original order and the determination of the provisions of Article 42. No record of that is available for no hearing was held.

In this state of the record it seems plain that petitioner's basic ground for complaint is its lack of an opportunity to examine the evidence relied on by the Commission in the first place, to examine or cross-examine the Commission's engineers, to inspect its engineering data and other information, and to call and present its own witnesses and exhibits prior to the time the Commission first made up its mind as to its order of July 12. The petitioner's complaint in that regard is presented to us by the following language in its petition for review:

"10. The Commission's orders and proceedings violate constitutional requirements and the requirements of Section 10(a), Sections 308 (a) (b) and Section 313(a) (16 U.S. C.A. Section 803, Section 825g, Section 825*l*) of the Federal Power Act, the Commission's Rules and Regulations, and the Administrative Procedure Act (5 U.S.C.A. Section 1001 et seq.) by having failed to allow intervention and participation by petitioner and having failed to hold a hearing prior to its order of July 12, 1956, and by having failed to hold and provide a hearing or to allow participation by Petitioner prior to its order of September 7, 1956, relative to the objection and issues stated and raised by petitioner's Petition of Intervention and Petition for Rehearing." [8]

Under § 308 of the Federal Power Act, Title 16 U.S.C.A. § 825g, the order granting the license was a matter "required by statute to be determined on the record after opportunity for an agency hearing" within the meaning of § 1004 of Title 5 U.S.C.A. This section of the Administrative Procedure Act calls for notice of hearing to persons entitled thereto, and makes mandatory the granting of opportunity to such persons to submit evidence, present argument and participate in the consideration of facts to be determined by the Commission. § 1006 of the same Title, provides for the conduct of such hearings, the evidence to be received, and that no order may be issued "except upon consideration of the whole record * * * and as supported by and

8. Paragraph 11 of the petition for review which followed recites:

"11. The Commission's failure and refusal to grant a hearing, to allow timely intervention and participation by Petitioner, or to allow a rehearing and the submission of additional evidence offered by the Petitioner, was in violation of the Commission's affirmative duty under Section 10(a) of the Federal Power Act (16 U.S.C.A. § 803) to issue licenses adapted to a comprehensive plan for river de-

velopment in that the Commission thereby failed and refused to consider evidence relating to the costs and development of the Wells project which is a part of the comprehensive plan of this segment of the Columbia River. As a direct result thereof, the Commission issued a license which was not so adapted to a comprehensive plan for river development, in that it unnecessarily jeopardized the Wells project."

in accordance with \* \* \* the evidence," [9] and provides that "The transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, shall constitute the exclusive record for decision in accordance with section 1007 of this title". § 1007 provides for opportunities for proposing findings and the taking of exceptions, particularly in cases where initial or tentative decisions have been made by examiners. § 1008 requires the proceedings specified in § 1006 and § 1007 to be followed in cases involving applications for a license. § 1009(e) provides:

"(e) So far as necessary to decision *and where presented* the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to the requirements of sections 1006 and 1007 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error." (Emphasis ours).

Noting the words "and where presented" in the section last quoted, it is plain that petitioner has presented to us the point made in its paragraph 10 of the petition for review quoted above, namely, that the Commission failed to allow intervention and participation by petitioner,—in short, that it denied a hearing. The question remains whether petitioner, in its proceedings before the Commission itself, has preserved the right to make that point in this court in view of the provision of § 313(b): "No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do."

Although § 313 containing this requirement was enacted long prior to the Administrative Procedure Act of June 11, 1946, the provisions of the later Act did not supersede the quoted requirement of objections in the application for rehearing. Cf. F. P. C. v. Colorado Interstate Gas Co., 348 U.S. 492, 499, 75 S.Ct. 467, 99 L.Ed. 583. Section 10 of the Act (Title 5 U.S.C.A. § 1009), in subdivision (b), expressly incorporates the procedure provisions of the Federal Power Act, reciting that "The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute." However the question remains whether in view of the purposes and provisions of the Administrative Procedure Act a denial of so fundamental a right as the right to a hearing is not reviewable here on the theory that the Commission denying such hearing has acted in excess of its jurisdiction or power.

---

9. "\* \* \* and no sanction shall be imposed or rule or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence. Every party shall have the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." Title 5 U.S.C.A. § 1006(c).

There cannot be any doubt that apart from this question as to whether petitioner properly raised the point before the Commission, the Commission was under the duty to hold a hearing and to afford petitioner an opportunity to participate therein. It is not questioned here that petitioner, as the holder of a preliminary permit for development of the Wells site, came within the statutory definition of a "person aggrieved". Indeed, prior to the order of July 12, 1956, directing the issuance of the license, both Douglas and Chelan were in the same status, i. e., both were then but holders of preliminary permits. The rules of the Commission provide for shortened procedures where hearing has been waived by failure of any person to file a request for a hearing.[10] But this was not such a case for as above noted, at all times after March 22, 1956, petitioner had its protest and petition to intervene and participate on file with the Commission.

While the Commission and Chelan have been at pains to call our attention to the fact that petitioner is only a prospective developer of the Wells site, with nothing more than a preliminary permit which may or may not subsequently ripen into something in the nature of a vested property right, yet we think this fact is not determinative here for there is no suggestion that the right to a hearing in this case is a constitutional right arising out of the requirements of due process. Undoubtedly Congress could by legislative enactment confer upon Chelan the exclusive right to develop Rocky Reach without providing for a hearing to any one. But the provision for hearing in all such cases as this has been written into the Administrative Procedure Act in most explicit terms, and the result is that those terms are as definitive of the Commission's powers as if they had been written into the Power Act itself.

Of course Douglas does not have a right equal in dignity to that of a person in possession of an established and developed power project, but it was no doubt the purpose of Congress in liberally extending the right to be heard to "persons aggrieved" to enlarge the class of persons who might participate in proceedings such as these, all to the end that these essentially adversary proceedings could assist the Commission in the performance of its duty under the Federal Power Act to work out a "comprehensive plan" for improving or developing waterways such as the Columbia.[11] Thus they help to represent the public interest in bringing to the attention of the Commission factors properly considered in setting up of such a plan. In speaking of a similar legislative purpose in respect to licenses for radio stations, the Supreme Court said in Federal Communications Commission v. Sanders Radio Station, 309 U.S. 470, 477, 642, 60 S.Ct. 693,

10. This provision is found in § 1.32(a) of the Commission's rules, (Title 18 C.F.R. § 1.32) as follows: "Shortened procedures—(a) Where hearing waived. In any proceeding in which the Commission is authorized to act after opportunity for hearing, if the parties waive hearing, such opportunity shall be deemed to have been afforded by service or publication in the Federal Register of notice of the application or other initial pleading, request, or other filing, such notice fixing a reasonable period of time within which any person desiring to be heard may file a protest or petition. Upon the expiration of such period of time, in the absence of a request for hearing, the Commission may forthwith dispose of the matter upon the basis of the pleadings and other submittals and the studies and recommendations of the staff. A party not requesting oral hearing in its pleadings shall be deemed to have waived a hearing for the purpose of such disposition, but shall not be bound by such waiver for the purposes of any application for rehearing with respect to an order so entered."

11. Title 16 U.S.C.A. § 803(a): "That the project adopted, including the maps, plans, and specifications, shall be such as in the judgment of the Commission will be best adapted to a comprehensive plan for improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water-power development, and for other beneficial public uses, including recreational purposes; and if necessary in order to secure such plan the Commission shall have authority to require the modification of any project and of the plans and specifications of the project works before approval."

698, 84 L.Ed. 869, 1037: "Congress had some purpose in enacting § 402(b) (2). [47 U.S.C.A. § 402(b) (2)]. It may have been of opinion that one likely to be financially injured by the issue of a license would be the only person having a sufficient interest to bring to the attention of the appellate court errors of law in the action of the Commission in granting the license. It is within the power of Congress to confer such standing to prosecute an appeal." [12] Petitioner, as the holder of a preliminary permit, was in a much stronger position as a "person aggrieved" than any of the petitioning parties in the Sanders case or in the cases mentioned in the last footnote. In this regard its showing was stronger even than that of petitioner in Ashbacker Radio Co. v. F. C. C., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108.

As previously indicated, the petition for rehearing made no mention of the Commission's failure to hold a hearing prior to the issuance of its order of July 12, 1956. The only objections listed related to the substance of the provisions of Article 42 of the Commission's order, complaining that this Article gave too great a share of the power to Rocky Reach and failed to provide a reasonable or equitable method of reimbursement to the Wells project for its loss of head at that point; and it found fault with the methods used by the Commission in arriving at the amount of power to be delivered to the Wells project on account of such loss. It also objected to the failure of Article 42 to provide for later modification of the award if future de-

velopment of upstream storage should modify the flow of the river. There was stated no objection to the failure of the Commission to permit petitioner an opportunity to be heard prior to the order for the license.

This state of the record poses a question similar to that considered by the Supreme Court in United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 69, 97 L.Ed. 54. In that case the Interstate Commerce Commission had entertained an application of a motor carrier for a certificate of convenience and necessity under the Interstate Commerce Act, 49 U.S.C.A. § 307. Tucker Truck Lines intervened in opposition to the application; the hearings were conducted by an examiner not appointed pursuant to § 11 of the Administrative Procedure Act, 5 U.S.C. A. § 1010. The Commission granted the certificate and Tucker petitioned the appropriate court to set aside the Commission's action. There for the first time Tucker challenged the validity of the Commission's action on the ground that the examiner was not appointed pursuant to this provision of the Administrative Procedure Act. The Supreme Court alluded to the generally recognized rule that "orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts." It then went on to consider the contention there made that the facts in that case took it outside this general rule

12. Cf. Scripps-Howard Radio v. F. C. C., 316 U.S. 4, 14, 62 S.Ct. 875, 882, 86 L.Ed. 1229: "The purpose of the Act was to protect the public interest in communications," and Federal Power Act, § 213, Title 16 U.S.C.A. § 825g: "In any proceeding before it, the Commission * * * may admit as a party * * * any other person whose participation in the proceeding may be in the public interest." See also United States v. Storer Broadcasting Co., 351 U.S. 192, 198, 76 S.Ct. 763, 100 L.Ed. 1081. For a most thorough discussion of who may be a "person aggrieved", and of the theory up-

on which the review proceedings in this court, viewed in the light of the Sanders and Scripps-Howard cases, may be entertained as properly presenting a case or controversy, see Associated Industries of New York State v. Ickes, 2 Cir., 134 F.2d 694, 700–705: "Such persons, so authorized, are, so to speak, private Attorney Generals." This case has been frequently cited with approval in other cases, including American Power & Light Co. v. Securities and Exchange Comm., 325 U.S. 385, 390, 65 S.Ct. 1254, 89 L. Ed. 1683.

in that because of the irregularity in respect to the hearing examiner the Commission had lost jurisdiction and its order was totally void. With two dissents, the Court held that the irregularity of the examiner's appointment was not a defect of such major character as to deprive the Commission of power or jurisdiction. It was noted that there was no claim of actual prejudice by the conduct or through the decision of the examiner resulting from his irregular appointment, and the Court recognized that had an appropriate objection been made in the hearings, the defect in the examiner's appointment would have invalidated the Commission's order. It went on to say: "But it is not one which deprives the Commission of power or jurisdiction, so that even in the absence of timely objection its order should be set aside as a nullity."

■ The question now presented to us is whether the complete failure of the Commission here to hold any hearing notwithstanding petitioner's "Protest" and "Petition to Intervene", was so serious a departure from the requirements of the applicable statute that it should be deemed "one which deprives the Commission of power or jurisdiction, so that even in the absence of timely objection its order should be set aside as a nullity." In seeking an answer, we note some distinctions between the facts here and those in the Tucker case, supra. In that case Tucker had its hearing, it had an opportunity to offer its evidence and to cross-examine as to opposing evidence. A record thereof was made and certified. The irregularity was conceded, but it was not claimed, and it was probably impossible to prove, that the examiner, who, no doubt, had something akin to a de facto status, had reached any result different than what would have happened had the appointment been a regular one. But where, as here, a party entitled to a hearing has been denied any hearing, the denial is presumptively prejudicial.

In Wong Yang Sung v. McGrath, 399 U.S. 33, 36–41, 70 S.Ct. 445, 94 L.Ed. 616, and Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 478–484, 71 S.Ct. 456, 95 L.Ed. 456, the Supreme Court has outlined the manner in which dissatisfaction with and criticisms of previously existing practices of administrative agencies, and of the lack of adequate review of their decisions led to the enactment of the Administrative Procedure Act, a really dramatic development in federal administrative law. Among the several major accomplishments of that Act were two which particularly concern this case. One was the establishment for all agencies of a uniform provision requiring real hearings, and "decisions upon the whole record",—a record made, in the language of § 7 of the Act, Title 5 U.S.C.A. § 1006, where "Every party shall have the right to present his case or defense by oral or documentary evidence," and where "The transcript of testimony and exhibits, * * * shall constitute the exclusive record for decision." The other major provision here noted was that for judicial review based upon "the whole record" so made.

The vital significance of those provisions is well illustrated by the situation in this case. The Commission recognized the petitioner's standing as a party, belatedly to be sure, by granting its petition to intervene. If it was a party it had, at the very least, the right to a court review of the order. Disregarding for the moment the question of its right to complain about the Commission's procedure, the provisions of § 10(e) of the Act, Title 5 U.S.C.A. § 1009(e) say that petitioner is entitled, in the words of the Universal Camera case, supra [340 U.S. 474, 71 S.Ct. 466], to have this court determine "whether on the record as a whole there is substantial evidence" to support the Commission's findings as to Article 42. The question is, where is that record? Manifestly it has not been made.[13]

13. The situation resembles that found in Colorado-Wyoming Gas Co. v. Federal Power Comm., 324 U.S. 626, 634, 65 S.

Ct. 850, 89 L.Ed. 1235, where the Court found it necessary to reject a portion of the Commission's decision because of lack

This is more than just an apparent absurdity,—it suggests the possibility of serious consequences. The real chance that the Commission's order as to Article 42 may have been arrived at upon inadequate data, or that vital considerations may have been overlooked, may mean that the ultimate usefulness of the Wells site has been destroyed. The permitted height of the Rocky Beach pool, plus the limitation on the amount of reimbursement, may so limit its potential capacity as to make its financing impractical. In this case the principal safeguards against such a result which Congress has built into the Act have been unavailable. Those are the opportunities for checking and testing the Commission's proposals by hearing, by critical scrutiny of proofs, and cross-examination, by introduction of counter proofs, and finally, by judicial review.

■ We are of the view that the failure of the Commission to hold a hearing was such a complete departure from the mandatory requirements of the Administrative Procedure Act that such failure, in contrast to that in the Tucker Truck case, supra, "deprives the Commission of power or jurisdiction" so that even in the absence of timely objection petitioner is entitled to seek in this court an order setting aside such agency action as may be "in excess of statutory jurisdiction" under § 10 of the Act. In so holding we are not deciding that the Commission's rules for a shortened procedure for granting licenses are invalid. The crucial point in this case is that the petitioner protested the issuance of a license. It was entitled to a hearing when it filed that protest. When the petition for rehearing was filed, while it did not object to the failure to give petitioner a hearing, it did raise substantive issues as to the correctness of Article 42 of the license. Petitioner is entitled to have review of the Commission's determination of those issues in this court. It cannot have that review here without a record. It is that absence of a record

of findings on the point and the Commission's failure to make a record con-

which divested the Commission of power to make its decision, for such a record, under § 1006(d) of Title 5 U.S.C.A., must be "the exclusive record for decision". We hold that petitioner's failure to object to the procedure used by the Commission cannot vitiate its right to review by this court of the substantive issues which it has unquestionably preserved. A totally different case would be presented where a person did not protest the issuance of a license.

■ Our holding means that the action of the Commission must be set aside insofar as it fixes the terms of Article 42. The cause must be remanded to the Commission with directions to grant a new hearing upon the questions presented by petitioner's protest and application for a rehearing, all in the manner prescribed by § 1006 of Title 5 U.S.C.A. We perceive no reason why this should call for a setting aside or modification of the license in any other respect, or alteration of its other terms. Indeed, the fact that work on the Rocky Reach dam has begun would suggest that hardship might best be avoided by not disturbing any other portions of the license. But whether what we require here will call for modification of the order in other respects is for the Commission to determine, for we cannot exercise that function. We have laid bare the error we think has taken place, and at that point the matter must go to the Commission. Federal Power Commission v. Idaho Power Co., 344 U.S. 17, 20–21, 73 S.Ct. 85, 97 L.Ed. 15.

■ We have stated what this court must necessarily do. As to whether that should be done now, and at the stage where we are denying the motion to dismiss, or whether we should await a further final hearing, the answer seems plain. Just as judicial review without findings is impossible, Colorado-Wyoming Co. v. Federal Power Comm., 324 U.S. 626, 634, 65 S.Ct. 850, 89 L.Ed. 1235, so the order here cannot be reviewed without a record of hearings.

forming to the requirements of the Administrative Procedure Act.

684

It appears to be established that where the full review contemplated by statute is frustrated, an appellate court, though without power to proceed with the appeal, may nevertheless "make such disposition of the case as justice requires." Walling v. James V. Reuter Co., 321 U.S. 671, 676, 64 S.Ct. 826, 829. A similar direction for action forthwith setting aside agency action appears to have been contemplated in Ashbacker Radio Co. v. F. C. C., supra, where also there was no record of agency hearings. While we cannot ourselves modify the order of the Commission, as the petitioner's motion prays, we do think it appropriate that we enter now the only order possible on this record. Accordingly, the portion of the Commission's order fixing the terms of Article 42 of the license is set aside, and the cause is remanded to the Commission for further proceedings in conformity with this opinion.