**ALCAN ALUMINUM LIMITED,**
**Plaintiff,**

v.

**The FRANCHISE TAX BOARD OF the STATE OF CALIFORNIA, operating through its New York Office; Frank Goodman, individually and as District Manager, New York Office of the Franchise Tax Board of the State of California; and Joseph E. Geoghegan, individually and as Supervisor—Audit Group, New York Office of the Franchise Tax Board of the State of California, Defendants.**

No. 81 Civ. 3911 (GLG).

United States District Court,
S.D. New York.

March 4, 1983.

Sidley & Austin by Charles W. Douglas, Chicago, Ill., and Sullivan & Cromwell, by John L. Warden, H. Lake Wise, New York City, and Lawrence A. Salibra, II, Cleveland, Ohio, for plaintiff.

George Deukmejian, Atty. Gen., State of Cal., by Edward P. Hollingshead, Charles C. Kobayashi, Deputy Attys. Gen., Sacramento, Cal., for defendants.

OPINION

GOETTEL, District Judge.

This action concerns a challenge by a foreign corporation against the tax treatment accorded its United States subsidiary by a state taxing authority. The following opinion grows out of an earlier one in which we decided to stay the action and postpone

consideration of the substantive issues involved in light of cases then pending before the California courts and the United States Supreme Court. *Alcan Aluminum Limited v. The Franchise Tax Board of the State of California,* 539 F.Supp. 512 (1982). In this opinion, we address the issue of whether plaintiff has standing to bring this action. For the reasons elaborated below, we conclude that it does not.

Plaintiff here is Alcan Aluminum Limited (Alcan), a Canadian Corporation. The defendants are the Franchise Tax Board of the State of California (FTB) and several of its employees. In this action, plaintiff is challenging the tax treatment that the FTB has accorded its wholly owned American subsidiary, Alcan Aluminum Corporation (Alcancorp).[1] Specifically, Alcan is attacking the use of California's unitary taxation method to determine its subsidiary's tax liability. Under this scheme, the separate identities of corporate family members are disregarded and all of a corporation's activities in a particular area are consolidated into a single unitary line of business to determine the net income of that business. *Max Factor & Co. v. Franchise Tax Board of California,* 35 Cal.App.3d 7, 9, 110 Cal. Rptr. 536, 537 (1973). Once this figure is ascertained, the percentages of the business entity's sales, property, and payroll within California are averaged. The previously determined net income is then multiplied by this average percentage to arrive at the corporation's tax liability. *See* Cal.Rev. & Tax Code §§ 25101, 25102, 25128–25136 (West 1979).

Plaintiff has brought this action to challenge the use of its income in determining the net income of its subsidiary. The FTB justifies this inclusion on the ground that Alcancorp and plaintiff's other subsidiaries are engaged in a unitary business, and that unitary taxation is proper "[w]hen the income of the taxpayer ... is derived from or attributable to sources both within and without the state." Cal.Rev. & Tax Code § 25101 (West 1979). Alcan objects to this global application of unitary taxation on the ground that it is unconstitutional.[2]

The defendants named in this action are the FTB, operating through its New York office, and a number of its representatives, acting as both individuals and as employees of the organization.[3] After this action was brought, defendants subsequently moved to have it dismissed on a number of grounds pursuant to Fed.R.Civ.P. 12(b). Of these various grounds, the only one we consider here is the issue of plaintiff's standing to bring this action. After careful deliberation, we have concluded that plaintiff does not have such standing.

Crucial to an understanding of this action is the federal Anti-Injunction Statute, which provides that "[t]he district courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (1976).

1. Alcancorp is a New York corporation, qualified to do business in California, with its principal place of business in Ohio.

2. After paying the tax as assessed, Alcancorp proceeded to seek a refund in the California courts. The basic premise of that refund action is that Alcancorp and Alcan's foreign subsidiaries are not involved in a unitary business taxable by California on a worldwide scale. Although some constitutional issues are raised in the California refund action, no injunctive or declaratory relief is sought there. In this action, by contrast, Alcan is seeking primarily declaratory and injunctive relief through constitutional claims.

3. These individuals are Frank Goodman, District Manager of the FTB's New York office, and Joseph E. Geoghegan, Supervisor of the Audit Group in the New York office.

> As we noted in our earlier opinion,
>
> [d]efendants have suggested that the proper responsible parties have not been named as individual defendants in this action. Apparently, the plaintiff has intentionally brought suit against certain local FTB employees, instead of the FTB board members, to establish venue in New York. If the board members were the defendants in this action, venue would not lie in this district because California is where the board members reside and have their official duty stations, and it is the place in which the actions giving rise to these claims occurred. 28 U.S.C. 1391(b) (1976). *Alcan Aluminum, supra* at 514 n. 2.

Defendants argue that this statute bars Alcan's action before this court because Alcan already has a "plain, speedy, and efficient" remedy in the form of its subsidiary's action now pending before the California courts. Defendants argue further that plaintiff is free to bring an action before the California courts itself. Plaintiff responds that its subsidiary has no standing to raise certain constitutional claims which it (Alcan) is raising before this Court.[4] Further, Alcan claims that it has no standing before the California courts because it is not a California taxpayer and California's remedy is available only to taxpayers.

In our earlier opinion in this action, we followed the Ninth Circuit in holding that a non-taxpaying foreign parent corporation is not barred by section 1341 from maintaining an action in federal court merely because a "plain, speedy and efficient" remedy is available to its domestic taxpaying subsidiary. *Alcan Aluminum, supra,* 539 F.Supp. at 514–15 (citation omitted).[5] Today, we decide that despite the availability of the Anti-Injunction Statute to this type of plaintiff, Alcan nevertheless lacks standing to sue in this action.

In setting forth certain requirements for standing, the Supreme Court has held that "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. See *Flast v. Cohen,* 392 U.S. 83, 95 [88 S.Ct. 1942, 1949, 20 L.Ed.2d 947] (1968). The concept of standing is part of this limitation. Unlike other associated doctrines, for example, that which restrains federal courts from deciding political questions, standing 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.' *Id.,* at 99 [88 S.Ct. at 1952]. As we reiterated last Term, the standing question in its Art. III aspect 'is whether the plaintiff has "alleged such a personal stake in the controversy" as to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.' *Warth v. Seldin,* 422 U.S. 490, 498–99 [95 S.Ct. 2197, 2204–2205, 45 L.Ed.2d 343] (1975) (emphasis in original). In sum, when a plaintiff's standing is brought into issue, the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation."

*Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37–38, 96 S.Ct. 1917, 1923–24, 48 L.Ed.2d 450 (1976).[6] Con-

---

4. Specifically, plaintiff argues that the state forum is not available to either itself or its subsidiary for claims relating to the foreign commerce clause.

5. At the same time, we expressed serious reservations as to whether the parent's and subsidiary's respective interests were not so similar that the subsidiary's action would determine the claims of both parties. *Alcan Aluminum, supra* at 514.

   It should also be noted that in hearing *EMI* on remand, the Northern District of California decided that the plaintiff, who occupied a position very similar to Alcan's in the instant case, had no standing. *EMI Limited v. William M. Bennett et al.,* No. 79–2146 (N.D.Cal. Oct. 8, 1982).

6. In *Eastern Kentucky,* a group of low-income individuals and their representative organizations challenged an IRS decision granting favorable tax treatment to various hospitals.

Plaintiffs argued that the hospitals should have been denied this treatment because they did not serve indigent patients to the full extent of their (the hospitals') financial abilities. Ruling that the plaintiffs had not shown sufficient injury to themselves, the Court declined to grant them standing. While the Court specifically denied ever reaching the issue of whether a third party may ever challenge IRS treatment of another party, *Eastern Kentucky, supra,* 426 U.S., at 37, 96 S.Ct. at 1923, the logical implication was that such a challenge should never be allowed. Indeed, as Justice Stewart noted in his concurring opinion,

> I add only that I cannot now imagine a case, at least outside the First Amendment area, where a person whose own tax liability was not affected ever could have standing to litigate the federal tax liability of someone else. *Id.* at 46, 96 S.Ct. at 1928.

sistently, the courts have required that plaintiffs demonstrate a "distinct and palpable injury" to themselves in order to acquire standing. *Warth v. Seldin, supra,* 422 U.S. at 501, 95 S.Ct. at 2206.

In an attempt to assert standing for itself in this action, plaintiff claims that the FTB has imposed a tax directly on its income. This is not so. California's unitary tax is specifically structured so as to tax a corporation proportionate to the amount of business it does within the State; the unitary method is *not* a tax on non-California businesses or income. Because the profits of a unitary business "arise from the operation of the business as a whole, it becomes misleading to characterize the income of the business as having a single identifiable 'source.'" *Mobil Oil Company v. Commissioner of Taxation,* 445 U.S. 425, 438, 100 S.Ct. 1223, 1232, 63 L.Ed.2d 510 (1980). The Supreme Court there recognized such unitary schemes to be a valid method of corporate taxation. *See also ASARCO, Inc. v. Idaho State Tax Commission,* —— U.S. ——, 102 S.Ct. 3103, 3109–10, 73 L.Ed.2d 787 (1982) and *F.W. Woolworth Co. v. Taxation & Revenue Dept.,* —— U.S. ——, 102 S.Ct. 3128, 3134, 73 L.Ed.2d 819 (1982). Thus, plaintiff's claim of a direct tax upon itself is invalid and Alcan has no "distinct and palpable injury" on which to base a claim of standing. *Warth v. Seldin, supra,* 422 U.S. at 501, 95 S.Ct. at 2206.

Alcan argues that the fact that its subsidiary has a remedy and standing is no reason for this Court to deny standing to itself. This would be true if plaintiff had a valid independent basis for standing. *See Schaffer v. Universal Rundle Corp.,* 397 F.2d 893, 896 (5th Cir.1968). *See also Mullins v. The First National Bank of Virginia,* 275 F.Supp. 712, 721–22 (W.D.Va.1967). But despite vigorous assertions to the contrary, plaintiff does not have such an independent claim. Once again, Alcan's unsubstantiated allegation of a direct tax upon itself is an insufficient basis for standing. While plaintiff cites a variety of cases giving stockholders a right to sue independently of the corporation when the corporation has been wronged, none of this authority applies to the instant case.[7] In all of these cases, the stockholder was accorded standing on the ground that "the wrong itself amount[ed] to a breach of duty owed to the stockholder personally." *Schaffer, supra,* 397 F.2d at 896. Moreover, it is clear that a mere fluctuation in the value of a corporation's stock or the size of its dividends will not suffice to give a stockholder an independent cause of action.[8] As the *Schaffer* court went on to explain,

> 'And it is universal that where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone, and not its stockholders (few or many), officers, directors, creditors or licensors, who has a right of recovery, even though in an economic sense real harm may well be sustained as the impact of such wrongful acts bring about reduced earnings, lower salaries, bonuses, injury to general business reputation, or diminution in the value of ownership.'

*Id.* at 896, citing *Martens v. Barrett,* 245 F.2d 844, 846 (5th Cir.1956). As plaintiff has failed to show any "independent duty"

---

7. Alcan acknowledges implicitly that its status as sole shareholder of Alcancorp is insufficient by itself to confer standing to redress a harm done to the corporation. Plaintiff's Memorandum on Standing at 3.

8. Plaintiff alleges that under *American Power & Light Co. v. S.E.C.,* 325 U.S. 385, 65 S.Ct. 1254, 89 L.Ed. 1683 (1945), "a sole shareholder can have an independent basis for standing, even when its *only injury* is a reduction in its expectation of dividends, if it is clear that the comparative effects of the injury as between the corporation and the shareholder are such that the effect on the corporation is not as adverse as the effect on the shareholder ..." Plaintiff's Memorandum on Standing at 6–7 (emphasis in original). Plaintiff neglects to point out, however, that this case concerned a statute that specifically granted standing to parties who would not otherwise have had it. 325 U.S. at 389–91, 65 S.Ct. at 1256–57. *American Power* has no bearing on the instant case, in which no such statute exists.

owed to it by defendant FTB, it has no grounds for standing.[9]

As mentioned above, the Supreme Court has repeatedly recognized the validity of formula apportionment in unitary taxation. Plaintiff seeks to circumvent this recognition by advocating the use of separate accounting. The Supreme Court, however, has already discredited this means of attacking formula apportionment in *Mobil Oil Company v. Commissioner of Taxation, supra,* 445 U.S. at 425, 100 S.Ct. at 1223.[10] In that case, a company sought to avoid taxation under a formula similar to California's by challenging a state's ability to tax income earned outside its borders. The Court replied to this challenge in no uncertain terms:

> The argument that the source of the income precludes its taxability runs contrary to precedent. In the past, apportionability often has been challenged by the contention that income earned in one State may not be taxed in another if the source of the income may be ascertained by separate geographical accounting. The Court has rejected that contention so long as the intra-state and extra-state activities formed part of a single unitary business. See *Butler Bros. v. McColgan,* 315 U.S. 501, 506–508 [62 S.Ct. 701, 704, 86 L.Ed. 991] (1942); *Ford Motor Co. v. Beauchamp,* 308 U.S. 331, 336 [60 S.Ct. 273, 276, 84 L.Ed. 304] (1939); *cf. Moorman Mfg. Co. v. Bair,* 437 U.S., [267] at 272 [98 S.Ct. 2340, 2343, 57 L.Ed.2d 197]. In these circumstances, the Court has noted that separate accounting, while it purports to isolate portions of income received in various States, may fail to account for contributions to income resulting from functional integration, centralization of management, and economies of scale. *Butler Bros. v. McColgan,*

315 U.S., at 508–509 [62 S.Ct., at 704]. Because these factors of profitability arise from the operation of the business as a whole, it becomes misleading to characterize the income of the business as having a single identifiable 'source.' Although separate geographical accounting may be useful for internal auditing, for purposes of state taxation it is not constitutionally required. *Id.* 445 U.S. at 438, 100 S.Ct. at 1232.

Plaintiff seeks to further bolster its argument against formula apportionment by emphasizing the foreign source of the income being taxed. In a strained syllogism, plaintiff argues that a) unitary taxation is a tax on foreign commerce, b) Alcancorp engages in no foreign commerce, so c) the tax must be upon Alcan rather than its subsidiary. As previously demonstrated, the unitary tax is imposed *neither* upon foreign commerce *nor* upon Alcan itself. The weakness of plaintiff's logic aside, this assertion once again ignores *Mobil Oil,* which held that the foreign source of income does not preclude its taxation under the unitary method. *Id.* at 438, 100 S.Ct. at 1232.

In addition to the previously cited authority on unitary taxation, several decisions have recently been handed down in the Ninth Circuit concerning cases with factual situations strikingly similar to the instant one. Plaintiff maintains that these cases do not undermine its position, but it is once again incorrect. *Shell Petroleum N.V. v. Mary Ann Graves et al.,* No. C–81–4302 (N.D.Cal. Aug. 4, 1982), concerned a foreign parent's challenge against the taxation of its domestic subsidiaries under California's method of formula apportionment. In that case, the Court made it clear that the plaintiff, whose position was almost identical to Alcan's here, had no standing. "It does not

---

**9.** Alcan might have standing limited to the issue of information demanded from its subsidiary that it must provide, but such standing would be restricted to that specific matter. Even then, such standing might well depend on whether the information was demanded directly of Alcan or indirectly through its subsidiary. This suggestion has already been made by another court in a similar factual situation. *EMI*

*Limited v. William M. Bennett,* 560 F.Supp. 134 (N.D.Cal. 1982).

**10.** Amazingly, plaintiff does not cite this key case once in its memorandum on standing. This glaring omission, in addition to numerous quotations out of context, does little to support the overall credibility of plaintiff's argument.

appear," the court observed, "that the constitutional provisions alleged to have been violated by the imposition of this method of taxation or by the Board's alleged informational demands specifically vest rights in or create any right of action in favor of, the shareholders as shareholders, apart from those of the corporation." *Id.,* at 516. Plaintiff makes the same claim regarding *EMI Ltd. v. William M. Bennett,* 560 F. Supp. 134 (N.D.Cal. 1982), another case similar to the instant one in which the court held that the plaintiff had no standing. We agree with the Northern District of California in holding that a plaintiff such as the one before us has no standing.[11] Alcan seeks to distinguish its own position from those of the plaintiffs in *Shell* and *EMI* by alleging that a tax is being assessed directly upon it. In *Shell* and *EMI* by contrast, the plaintiffs made no such claim, instead challenging the tax only insofar as it applied to their subsidiaries. As previously mentioned, plaintiff's claim of a tax imposed directly upon itself is groundless. Once again, the mere assertion of a groundless claim is not sufficient to confer standing upon the claimant.

Finally, plaintiff relies heavily on *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1978) in a further attempt to establish standing. That case concerned a property tax imposed by a local government on shipping containers owned, based, and registered abroad. The Supreme Court specifically limited its holding in *Japan Line* to the narrow issue of "whether instrumentalities of commerce that are owned, based, and registered abroad and that are used exclusively in international commerce, may be subjected to apportioned ad valorem property taxation by a State." 441 U.S. at 444, 99 S.Ct. at 1819. Obviously, *Japan Line* is inapposite to the instant case. Here, there are no "instrumentalities of commerce" present, and the assessment at issue is an income tax rather than an ad valorem property tax. Thus, *Japan Line* has no bearing on the instant case.

For all of the above reasons, we hold that plaintiff has no standing. It is therefore ordered that the action be dismissed.

SO ORDERED.

---

11. It should be noted that in both *Shell* and *EMI*, the plaintiffs brought their respective ac-

tions in California, the site of the allegedly illegal taxation.