# FRANCHISE TAX BOARD OF CALIFORNIA ET AL. *v.* ALCAN ALUMINIUM LTD. ET AL.

No. 88–1400.   Argued November 1, 1989—Decided January 10, 1990

WHITE, J., delivered the opinion for a unanimous Court.

*Timothy G. Laddish,* Assistant Attorney General of California, argued the cause for petitioners. With him on the briefs were *John K. Van de Kamp,* Attorney General, and *Patricia Streloff.*

*Lawrence A. Salibra II* argued the cause for respondents. With him on the brief for respondent Alcan Aluminium Ltd. was *Peter D. Miller. James Merle Carter* and *John B. Lowry* filed briefs for respondent Imperial Chemical Industries PLC.*

*Briefs of *amici curiae* urging reversal were filed for the State of Idaho et al. by *James T. Jones,* Attorney General of Idaho, *Theodore V. Spangler, Jr.,* Deputy Attorney General, *Don Siegelman,* Attorney General of Alabama, *Robert K. Corbin,* Attorney General of Arizona, *John Steven Clark,* Attorney General of Arkansas, *Duane Woodard,* Attorney General of Colorado, *Clarine Nardi Riddle,* Acting Attorney General of Connecticut, *Frederick D. Cooke, Jr.,* Corporation Counsel of District of Columbia, and *Charles L. Reischel,* Deputy Corporation Counsel, *Robert A. Butterworth,* Attorney General of Florida, *Michael J. Bower,* Attorney General of Georgia, *Warren Price III,* Attorney General of Hawaii, *Neil F. Hartigan,* Attorney General of Illinois, *Linley E. Pearson,* Attorney General of Indiana, *Thomas J. Miller,* Attorney General of Iowa, *Robert T. Stephan,* Attorney General of Kansas, *James E. Tierney,* Attorney General of Maine, *J. Joseph Curran, Jr.,* Attorney General of Maryland, *James M. Shannon,* Attorney General of Massachusetts, *Hubert H. Humphrey III,* Attorney General of Minnesota, *William L. Webster,* Attorney General of Missouri, *Marc Racicot,* Attorney General of Montana, *Robert M. Spire,* Attorney General of Nebraska, *John P. Arnold,* Attorney General of New Hampshire, *Peter N. Perretti, Jr.,* Attorney General of New Jersey, *Hal Stratton,* Attorney General of New Mexico, *Robert Abrams,* Attorney General of New York, *Nicholas J. Spaeth,* Attorney General of North Dakota, *Dave Frohnmayer,* Attorney General of Oregon, *Ernest D. Preate, Jr.,* Attorney General of Pennsylvania, *James E. O'Neil,* Attorney General of Rhode Island, *Roger A.*

JUSTICE WHITE delivered the opinion of the Court.

This case presents two questions: First, whether a foreign company, sole shareholder of an American subsidiary, has standing to challenge in federal court, on Foreign Commerce Clause grounds, the accounting method by which the State of California determines the locally taxable income of that subsidiary; and second, whether such a federal action for injunctive and declaratory relief is barred by the Tax Injunction Act, 28 U. S. C. § 1341 (1982 ed.). The Court of Appeals for the Seventh Circuit held that the foreign companies involved in this case had alleged injuries sufficiently direct and independent of the injuries to their subsidiaries to confer both Article III and stockholder standing, and that their federal actions were not barred by the Tax Injunction Act or the principle of comity that underlies that Act. 860 F. 2d 688 (1988). We granted certiorari, 490 U. S. 1019 (1989), and conclude that there is an Article III case or controversy, as-

*Tellinghuisen*, Attorney General of South Dakota, *Charles W. Burson*, Attorney General of Tennessee, *Jim Mattox*, Attorney General of Texas, *R. Paul Van Dam*, Attorney General of Utah, *Jeffrey L. Amestoy*, Attorney General of Vermont, *Mary Sue Terry*, Attorney General of Virginia, *Kenneth O. Eikenberry*, Attorney General of Washington, *Charles G. Brown*, Attorney General of West Virginia, *Donald J. Hanaway*, Attorney General of Wisconsin, and *Joseph B. Meyer*, Attorney General of Wyoming; and for the Council of State Governments et al. by *Benna Ruth Solomon, Joyce Holmes Benjamin, Martin Lobel*, and *James F. Flug*.

Briefs of *amici curiae* urging affirmance were filed for the Member States of the European Communities et al. by *F. Eugene Wirwahn;* for the Government of Canada by *Mr. Wirwahn;* for the Government of the United Kingdom by *Mr. Wirwahn;* for the Committee on State Taxation of the Council of State Chambers of Commerce by *Paul H. Frankel* and *William D. Peltz;* and for the Union of Industrial and Employers' Confederations of Europe et al. by *Alexander Spitzer*.

Briefs of *amici curiae* were filed for the Committee of London and Scottish Bankers by *Joanne M. Garvey* and *Joan K. Irion;* for the Multistate Tax Commission by *Alan H. Friedman* and *Paull Mines;* and for Shell Petroleum N. V. by *John R. Hupper, Richard W. Clary*, and *Steward R. Bross, Jr.*

sume that respondents have standing as stockholders, and hold that these actions are barred by the Tax Injunction Act. Accordingly, we reverse.

I

Respondent Alcan Aluminium Limited (Alcan) is a Canadian company and indirect sole shareholder of Alcan Aluminium Corporation (Alcancorp), an Ohio corporation with operations in California. Respondent Imperial Chemical Industries PLC (Imperial) is a British company and indirect sole shareholder of ICI Americas, Inc. (Americas), a Delaware corporation that conducts business in California. This case arises out of two separate lawsuits brought in the District Court for the Northern District of Illinois by Alcan and Imperial against petitioners herein, the Franchise Tax Board of the State of California (Board) and certain of its Chicago employees. Respondents' lawsuits sought declaratory and injunctive relief from the Board's method of determining the taxable income of Alcancorp and Americas allocable to California. Under that method, known as the "unitary business/formula apportionment method," the Board calculates the total earnings of the "unitary business" of which the California taxpayer is a part. It then calculates an allocation fraction for the taxpayer by taking an unweighted average of three ratios: California payroll to total payroll, California property value to total property value, and California sales to total sales. Finally, to obtain the taxpayer's taxable income allocable to California, the Board multiplies the taxpayer's allocation fraction by the total income of the unitary business.

Respondents allege that application of this "unitary tax" to domestic subsidiaries of foreign corporations violates the Foreign Commerce Clause, U. S. Const., Art. I, § 8, cl. 3. See *Japan Line, Ltd.* v. *County of Los Angeles*, 441 U. S. 434, 451 (1979). We expressly left open this issue when we addressed similar claims made by a domestic parent company with foreign subsidiaries. See *Container Corp. of America*

v. *Franchise Tax Bd.*, 463 U. S. 159, 189, n. 26, and 195, n. 32 (1983).

## II

The first issue in this case is whether respondents have standing to bring these actions. We have treated standing as consisting of two related components: the constitutional requirements of Article III and nonconstitutional prudential considerations. See *Warth* v. *Seldin*, 422 U. S. 490, 498 (1975). We stated the requirements for an Article III case or controversy in *Valley Forge Christian College* v. *Americans United for Separation of Church & State, Inc.*, 454 U. S. 464, 472 (1982):

> "Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' *Gladstone, Realtors* v. *Village of Bellwood*, 441 U. S. 91, 99 (1979), and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision,' *Simon* v. *Eastern Kentucky Welfare Rights Org.*, 426 U. S. 26, 38, 41 (1976)."

The Seventh Circuit stated that the Board did not seriously contest Article III standing, 860 F. 2d, at 691–692, and ruled that respondents' ownership interests in their domestic subsidiaries alone, considered apart from any direct harms suffered as participants in foreign commerce, gave Alcan and Imperial "'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the Court so largely depends for illumination of difficult constitutional questions.' *Baker* v. *Carr*, 369 U. S. 186, 204 (1962)." *Id.*, at 692. The Board takes issue with the Seventh Circuit's characterization of its position with respect to Article III standing: "[T]he Board has never accepted the proposition that a shareholder seeking to redress a corporate

injury has standing in the constitutional sense." Brief for Petitioners 20, n. 4. Petitioners emphasize that a plaintiff must show that he *personally* has suffered an actual or threatened injury and question whether a sole shareholder's ownership interest in a corporation is sufficient by itself to satisfy the "injury in fact" requirement of Article III. *Ibid.*

We think that the Court of Appeals was quite right in holding that respondents have Article III standing to challenge the taxes that their wholly owned subsidiaries are required to pay. California's accounting method determines the amount of the taxes assessed against the subsidiaries. If those taxes are higher than the law of the land allows, that method threatens to cause actual financial injury to Alcan and Imperial by illegally reducing the return on their investments in Alcancorp and Americas and by lowering the value of their stockholdings. A judicial determination that the Board's accounting method is unconstitutional under the Foreign Commerce Clause would prevent such injuries. That is all that is required for Article III standing.

The more difficult issue is whether respondents can meet the prudential requirements of the standing doctrine. One of these is the requirement that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth* v. *Seldin, supra,* at 499. Related to this principle we think is the so-called shareholder standing rule. As the Seventh Circuit observed, the rule is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment. 860 F. 2d, at 693. There is, however, an exception to this rule allowing a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated. Respondents claim to fall within this exception, arguing that they have suffered

direct injuries independent of their status as shareholders of Alcancorp and Americas. Specifically, respondents complain of the burden of complying with California's information demands, the alleged burden of double taxation caused when California taxes foreign affiliate income that is already subject to taxes in other jurisdictions, and the burden on their choice to use an American subsidiary as an instrumentality of foreign commerce. Petitioners insist that respondents' injuries are entirely derivative of their ownership interests in Alcancorp and Americas.

The Seventh Circuit concluded that the compliance costs and double taxation claims did not give respondents stockholder standing because these alleged burdens were better viewed as merely added costs to the subsidiaries, experienced by the foreign parents as a decline in the value of their ownership interests. *Id.*, at 696–697. However, the court reasoned that to focus exclusively on the parents' status as shareholders ignores a second feature of the foreign parent-domestic subsidiary relationship: the subsidiaries are owned as instrumentalities of the foreign commerce of their parents. *Id.*, at 697. The Seventh Circuit stated that the unitary tax diminishes the attractiveness of owning American subsidiaries in comparison with entering into contracts with independent companies as a means of engaging in foreign commerce and concluded: "It is the incidence of the unitary tax, its potential to disfavor a particular mode of foreign participation in the American economy, rather than the magnitude of the costs it imposes that provides the strongest argument for standing." *Ibid.* The Seventh Circuit did not decide the constitutional significance of this threat to foreign commerce under the facts of this case, but decided that in this light, there was a sufficient threat of independent injury to respondents to confer standing on them to maintain their suits.

The Ninth Circuit, in contrast, has held that California's unitary tax does not cause direct or independent harm to a foreign parent of a domestic subsidiary so as to give the

parent standing under the shareholder standing rule. *Shell Petroleum, N. V.* v. *Graves*, 709 F. 2d 593, 595, cert. denied, 464 U. S. 1012 (1983). See also *EMI Ltd.* v. *Bennett*, 738 F. 2d 994, 997 (CA9), cert. denied, 469 U. S. 1073 (1984) (following *Graves*); *Alcan Aluminum Ltd.* v. *Franchise Tax Bd.*, 558 F. Supp. 624, 626–629 (SDNY), aff'd, 742 F. 2d 1430 (CA2 1983), cert. denied, 464 U. S. 1041 (1984).

We need not decide this dispute about respondents' stockholder standing, for assuming that respondents do have such standing, cf. *Moe* v. *Confederated Salish and Kootenai Tribes*, 425 U. S. 463, 479–480 (1976), their federal actions are nevertheless barred under the Tax Injunction Act.

## III

The Tax Injunction Act provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U. S. C. § 1341 (1982 ed.). This provision applies to declaratory as well as injunctive relief. *California* v. *Grace Brethren Church*, 457 U. S. 393, 408 (1982). As explained in *Rosewell* v. *LaSalle National Bank*, 450 U. S. 503, 522 (1981) (footnote omitted):

> "The statute 'has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations.' *Tully* v. *Griffin, Inc.*, 429 U. S. [68, 73 (1976)]. This last consideration was the principal motivating force behind the Act: this legislation was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."

To the extent they are available, California's refund procedures constitute a plain, speedy, and efficient remedy. Cf. *Grace Brethren Church, supra*, at 417. However, it is undisputed that only Alcancorp and Americas, as the actual tax-

payers, can bring a California state-court challenge to the unitary business/formula apportionment method of calculating their tax. To the Seventh Circuit, this fact was enough to make the Tax Injunction Act inapplicable: "[T]he Act has not been construed so broadly as to bar a nontaxpayer (like the parent companies involved here) who lacks a remedy in state court from bringing suit in federal court on the ground that an affiliated taxpayer possesses adequate state court remedies." 860 F. 2d, at 698. This statement may be true, but we arrive at a different conclusion. As sole shareholders, respondents have total control over Alcancorp and Americas. They can direct in all respects their subsidiaries' pursuit of state-court relief from the unitary tax. Respondents' inability to bring state-court challenges in their own names is not determinative where, as here, they control entities that can bring such challenges. To rule otherwise would be to elevate form over substance. See *South Carolina* v. *Regan*, 465 U. S. 367, 381, n. 19 (1984). We therefore construe the Tax Injunction Act as barring a federal action by a party who has under its direction and control an entity possessing a plain, speedy, and efficient remedy for the controlling party's claims.

Alcan and Imperial contend that even if they are treated as effectively having all of the remedies available to their subsidiaries, they nevertheless do not have a "plain, speedy and efficient remedy" within the meaning of the Tax Injunction Act because their subsidiaries would not be permitted to raise a Foreign Commerce Clause challenge to California's unitary tax, or at least could not base such a challenge on the allegedly distinct foreign commerce injuries suffered by their parent corporations. According to Imperial: "Americas, unlike Imperial, is not within the class of foreign investors protected by federal foreign commerce policy." Brief for Respondent Imperial 24. Imperial argues the inverse of the shareholder standing rule—a corporation has no standing to raise claims based on injury to its shareholders. *Id.*, at 26.

Alcan contends that civil actions in California must be prosecuted in the name of the real party in interest and that "[i]f the injury is the effective deprivation of the use of a subsidiary as a vehicle for the conduct for [sic] foreign commerce, there is but one real party in interest, [Alcan]." Brief for Respondent Alcan 47, n. 24.

Petitioners, however, insist that the California courts would entertain and decide the issues that respondents desire to present. Brief for Petitioners 47–48. They point out that respondents represent that their subsidiaries are instrumentalities of foreign commerce and argue that "it only makes sense" that the subsidiaries, who are the taxpayers, be entitled to complain of any burdens on foreign commerce that would relieve them of the taxes assessed against them. *Id.*, at 48. At oral argument, counsel for petitioners reiterated that position, Tr. of Oral Arg. 5, 12, 15, and informed the Court that, with respect to cases currently pending in the California courts, "in no case is the state claiming that the subsidiaries cannot raise those foreign commerce claims." *Id.*, at 6.

The Board's position is, of course, not binding on the California courts, and a remedy that is uncertain or speculative is not adequate to bar federal jurisdiction, *Rosewell, supra*, at 516–517; *Grace Brethren Church, supra*, at 414, n. 31. Here, however, respondents have not demonstrated that their remedy is uncertain. Under California law, a taxpayer "claiming that the tax computed and assessed against it under this part is void in whole or in part may bring an action, upon the grounds set forth in its claim for refund . . . ." Cal. Rev. & Tax. Code Ann. § 26102 (West 1979). We have been cited no case in which the California courts refused to hear a claim similar to the claims respondents want made by their subsidiaries, and there is authority to the contrary. In *Mercedes-Benz of North America, Inc.* v. *State Bd. of Equalization*, 127 Cal. App. 3d 871, 874, 179 Cal. Rptr. 758, 760 (1982), hearing denied, Mar. 17, 1982 (Cal. Sup. Ct.),

a California appellate court allowed a domestic subsidiary of a foreign corporation to challenge a tax on the ground that it burdened the foreign parent's election to conduct business through a separately incorporated subsidiary rather than a corporate subdivision. Although we cannot authoritatively determine California law, we agree with the Seventh Circuit that "[respondents] have not given us any convincing reason to doubt that the California courts will entertain Alcancorp's and Americas' foreign commerce clause arguments." 860 F. 2d, at 691. Respondents cannot therefore escape the prohibitions of the Tax Injunction Act.

Should the California courts refuse to permit the subsidiaries to raise the contentions that the parents want heard, the result under the Tax Injunction Act might well be different. At this point, however, we cannot hold the Act inapplicable on the mere speculation that the California courts will not allow the taxpayer subsidiaries to raise arguments going to the constitutionality of the taxes they are required to pay.

## IV

We conclude that these federal actions are barred by the Tax Injunction Act. The judgment of the Seventh Circuit is therefore reversed.

*It is so ordered.*