UNITED STATES of America, Plaintiff,

v.

COUNTY OF NASSAU, NEW YORK; Charles O'Shea, Chairman, Nassau County Board of Assessors and Nassau County Board of Assessors, Defendants.

No. 99–CV–3334 (ADS).

United States District Court, E.D. New York.

Jan. 11, 2000.

---

Loretta E. Lynch, United States Attorney, Brooklyn, NY, by Sanford Cohen, Assistant U.S Attorney, Bill Lann Lee, Acting Assistant Atty. General, Civil Rights Division, Joan Magagna, Chief, Housing and Civil Enforcement Section, for plaintiff United States.

Farrell Fritz, P.C., Uniondale, NY, by Dolores Fredrich, James M. Wicks, Jennifer M. Mone, of counsel, for defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case, which appears to be one of first impression in the federal courts, concerns the right of the Federal Government to sue in federal court to enjoin an allegedly discriminatory state property tax on ordinary citizens. In a case filed under the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.*, the United States alleges that the Defendant Nassau County assesses residential real property taxes in a racially discriminatory manner. Presently pending before the Court is the Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

## *BACKGROUND*

For property tax purposes, Nassau County assesses Class I residential real estate, defined as one-, two-, and three-family residences and certain condominiums, by valuing their construction cost in 1938 dollars and adding to that figure the underlying land value as determined by a county-wide valuation updated most recently in 1964. In short, the Nassau County system determines the value of real property for tax assessment purposes based on reference to historical data instead of current market valuations.

The Government alleges that this practice is racially discriminatory, since property values have risen faster and higher, relative to the historical benchmarks used by the County, in non-minority areas. Because property values in non-minority areas have risen faster than property values in minority neighborhoods, the Government alleges that the County's reliance on old valuation data forces minority property owners in Nassau County to pay a greater proportion of the *current* market value of their property in residential taxes than do property owners in non-minority areas. The Government contends that this disparity results in tax assessments in largely minority areas to be 27% higher relative to current property values than assessments in mostly white areas.

The Government's complaint alleges that this assessment methodology constitutes discrimination in the terms, conditions, and privileges of the sale of dwellings and in the provision of services and facilities related to the sale of dwellings, in violation of the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3604(b) and 3605(a). It further contends that Nassau County's methodology constitutes a pattern and practice of resistance to minorities' enjoyment of rights under the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.* It seeks declaratory relief, an injunction prohibiting Nassau County from continuing to assess residential property in the current manner, a direction to re-assess all properties, and compensatory damages to persons affected by the County's practices.

Nassau County filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1), contending that this Court lacks subject matter jurisdiction. Specifically, Nassau County contends that the Tax Injunction Act, 28 U.S.C. § 1341, divests this

Court of jurisdiction to hear cases seeking to enjoin the collection of state taxes where a "plain, speedy, and efficient remedy" can be had by the plaintiff in state court. Nassau County points out that a pending case in New York State Supreme Court "essentially mirrors the complaint here," and thus, is a sufficient state remedy so as to warrant application of the Tax Injunction Act to bar the request by the United States for both injunctive and declaratory relief. Nassau County also alleges that principles of comity prevent the Court from awarding compensatory damages against it.

The Government responds by citing to exceptions to the Tax Injunction Act where the United States is suing to protect itself and its instrumentalities from unconstitutional state taxes, and where the United States otherwise has standing to protect and enforce its own policies and programs, such as its policy against racial discrimination in housing.

## DISCUSSION

The Tax Injunction Act of 1937, 28 U.S.C. § 1341, states that

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

See also *Arkansas v. Farm Credit Services of Central Ark.*, 520 U.S. 821, 117 S.Ct. 1776, 138 L.Ed.2d 34 (1997). The statute is premised upon the imperative need of a state to administer its own fiscal operations, free from interference by the federal courts. *Tully v. Griffin*, 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976). The prohibition is of a jurisdictional nature, *Franchise Tax Board of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 338, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990), *citing Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981), and where there is doubt as to its applicability, the Supreme Court has directed that the Tax Injunction Act be interpreted consistent with its function of limiting federal intrusion into state matters. *Jefferson County v. Acker*, 527 U.S. 423, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999).

The United States does not challenge Nassau County's assertion that a speedy and efficient remedy exists under state law. Rather, it contends that this action falls within both of two exceptions to the Tax Injunction Act: (i) an exception allowing the U.S. Government to challenge taxes on its instrumentalities, and (ii) an exception allowing the Government to sue to effectuate its own statutes and policies.

### A. As to taxation of federal instrumentalities

There is a well-recognized exception to the Tax Injunction Act of 1937 where the United States sues to protect itself or its instrumentalities from state taxation. *Arkansas, supra.; Department of Employment v. United States*, 385 U.S. 355, 358, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966). In applying the "instrumentality exception," the court's task is to ascertain whether the particular institution threatened with taxation is so closely related to governmental activity as to become tax-immune. *Department of Employment*, 385 U.S. at 358–59, 87 S.Ct. 464.

Although the Government's brief urges this exception to the Tax Injunction Act in this case, it fails to explain which instrumentality or institution it is attempting to protect from taxation. The complaint clearly alleges that residential property owners of Nassau County are subject to discriminatory taxation, but does not contend that any federal institution or instrumentality is caught within Nassau County's net. *Compare U.S. v. Lewisburg Area School Dist.*, 539 F.2d 301 (3d Cir.1976) (instrumentality exception applied to permit Government to sue to protect residents of a federal enclave from state taxes). Indeed, the fact that the challenged tax is

assessed against owners of non-exempt Class I residential real property, defined as one-, two-, and three-family residences, strongly suggests that the no federal instrumentality would be subject to such an assessment.

The Plaintiff appears to rely on the instrumentality exception in a broader sense. Remarkably, the Government alleges that Congress intended to exempt from the Tax Injunction Act's ban *any* challenge to state taxes brought by the Federal Government. *Citing Dept. of Employment,* 385 U.S. at 358 n. 7, 87 S.Ct. 464; *Arkansas,* 520 U.S. at 827–28, 117 S.Ct. 1776. A fragment of the Supreme Court's decision in *Arkansas* supports such an argument. There, the Court mentioned, in passing, that "... the Tax Injunction Act is inapplicable where the United States is a party...." 520 U.S. at 829, 117 S.Ct. 1776. However, nowhere else in the Court's opinion in *Arkansas,* nor in any other reported decision of any court, has such a broad and heretofore unspoken exception to the Tax Injunction Act been described. Indeed, in several other passages in *Arkansas,* the Court felt compelled to qualify the Government's exemption from the Act only to matters involving the Federal Government directly or through its instrumentalities. *See* 520 U.S. at 827, 117 S.Ct. 1776 ("the now settled rule that the Tax Injunction Act is not a constraint on federal judicial power when the United States sues *to protect itself and its instrumentalities from state taxation.*") (emphasis added), 827–28 (quoting same from *Department of Employment,* 385 U.S. at 358, 87 S.Ct. 464). The qualified language in these quotes would be unnecessary if the Government's exemption from the Tax Injunction Act were as broad as it presently argues here.

Thus, the Court is not persuaded that the barrier of the Tax Injunction Act is removed simply because the Federal Government is a party to the action. Indeed, in several cases in which the Federal Government brought an action to challenge a state tax, the courts have invariably recited the instrumentality analysis, rather than merely announcing that suits filed by the Government automatically overcome the Tax Injunction Act's bar, regardless of the interest being asserted. *See e.g. U.S. v. Maryland,* 488 F.Supp. 347 (D.Md.), *aff'd.* 636 F.2d 73 (4th Cir.1980), *cert. den.* 451 U.S. 1017, 101 S.Ct. 3005, 69 L.Ed.2d 388 (1981) (allowing federal challenge to state tax on congressman's residence in Maryland under the instrumentality doctrine); *State of New York v. U.S.,* 574 F.2d 128 (2d Cir.1978) (federal challenge to estate taxation of property escheating to government permitted as the tax was assessed on the government).

█ Thus, the Court finds that the Federal Government does not have a standing exemption from the strictures of the Tax Injunction Act merely because it sues in its own name. Because there is no allegation in the complaint that Nassau County taxes are being assessed against federal instrumentalities, the Court finds that this exception to the Tax Injunction Act does not apply in this case.

### B. As to the protection of federal policies and programs

The U.S. also argues that a second exception to the Tax Injunction Act exists "when [the federal Government] has standing to sue to vindicate its sovereign interest in the protection and enforcement of its policies and programs." In contrast to the oft-cited instrumentalities exception, the Government here argues that the "federal policies" exception arises implicitly from *Moe v. Confederated Salish and Kootenai Tribes of the Flathead Reservation,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976).

In *Moe,* representatives of an Indian tribe brought suit to enjoin the state's collection of sales and personal property taxes on their reservation. The Supreme Court reversed the district court's application of the "instrumentality" exception to the Tax Injunction Act, finding that case law had clearly established that Indian

tribes were not federal instrumentalities. *Id.* at 471, 96 S.Ct. 1634. However, the Court went on to observe that a 1966 federal statute, 28 U.S.C. § 1362, which vested jurisdiction in district courts over cases brought by Indian tribes under federal laws, authorized tribes to bring such an action in federal court. *Id.* at 470–75, 96 S.Ct. 1634. Faced with the tension between Section 1362's grant of jurisdiction to the district courts over Indian lawsuits, and Section 1341's deprivation of district court jurisdiction over cases involving state tax systems, the Supreme Court resolved the matter by turning to the legislative history of Section 1362, finding that it was intended to give Indian tribes the right to bring the same federal lawsuits that the government itself could bring. The Court in *Moe*, citing instrumentality cases, then went on to observe that the United States Government would have standing to bring the tax challenge pressed by Moe. *Id.* at 473, 96 S.Ct. 1634. In a footnote, the Court explained that although the "instrumentality" approach was no longer an appropriate defense to the application of the Tax Injunction Act in Indian affairs cases, the Government's authority to challenge the tax in federal court nevertheless derived from the fact that federal legislation and treaties pre-empted state powers to levy taxes on Indians *Id.* at 474 n. 13, 96 S.Ct. 1634, *citing McClanahan v. Arizona State Tax Com'n*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973).

A close reading of *Moe* offers no support for the Government's claim that the Federal Government is exempt from the Tax Injunction Act when suing to vindicate general "federal policies." Footnote 13 in *Moe* reveals that the Court's basis for finding jurisdiction to challenge the tax was not the finding that "federal policies" were involved, but the fact that federal law and treaties involving Indian affairs affirmatively pre-empted the challenged tax. In addition, and perhaps more importantly, the Court went on to address the close relationship of interests between the Gov-

ernment and the Indians which, while not sufficient to invoke the instrumentality exception, would nevertheless give the Government a sufficient interest in the outcome of the case to enable it to sue to vindicate those policies. In a somewhat prescient opinion, written two years prior to *Moe* and based on the same authority that the Supreme Court eventually would rely on, the Ninth Circuit aptly characterized the crux of the reasoning that would eventually become footnote 13 in *Moe*:

> ... the instrumentality doctrine has also been held applicable where the Government sues on behalf of a private party in order to protect and enforce its policies *with respect to those in whom the United States has a special interest*, though perhaps not a proprietary one.

*Moses v. Kinnear*, 490 F.2d 21, 24–25 (9th Cir.1973) (emphasis added), *citing U.S. v. Arlington County*, 326 F.2d 929 (4th Cir. 1964) (the court allowed the Government to maintain an action challenging personal property taxes levied by the state against military servicemen temporarily assigned there).

■ To the extent that *Moe* announces a "federal policies" exception to the Tax Injunction Act, this Court finds that such an exemption turns upon whether the policies the Government seeks to protect involve a class of persons in which the Government maintains a "special interest." *See also Osceola v. Florida Dept. of Revenue*, 893 F.2d 1231, 1233 (11th Cir.1990) ("It seems clear [that section 1341] does not bar federal court jurisdiction in cases where immunity from state taxation is asserted on the basis of federal law with respect to persons or entities in which the United States has a real and significant interest.").

■ While the Government may have a "special interest" in defending its policies that exempt from taxation certain clearly defined groups such as Indians, *Moe, supra, Osceola, supra*, or military servicemen, *see Arlington, supra, U.S. v. County*

*of Champaign,* 525 F.2d 374 (7th Cir.1975), or members of Congress, *see U.S. v. Maryland,* 488 F.Supp. 347 (D.Md.1980), it cannot assert a similar special interest in protecting the general population of Nassau County property owners. Certainly, the Federal Government has a clear, proper, and important interest in eliminating racial discrimination. However, the Court does not view this general interest in achieving equality for all persons to be sufficiently similar to the particularized interests that courts have previously identified as operating to remove the bar of the Tax Injunction Act. For example, in *Fair Assessment in Real Estate Assoc. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), a group of homeowners sued country officials, alleging that a racially discriminatory tax assessment system violated their civil rights under Section 1983. After balancing the principles of comity underlying the Tax Injunction Act as against the Section 1983 right of access to the federal courts to redress civil rights violations, the Supreme Court sided with comity. *Id.* at 105, 102 S.Ct. 177, *see also National Private Truck Council v. Oklahoma Tax. Com'n,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995) (rejecting challenge to state taxes under Section 1983 on Tax Injunction Act grounds); *Garrett v. Bamford,* 538 F.2d 63 (3d Cir.1976).

Accepting the Government's argument that the Tax Injunction Act should not apply when a state tax allegedly violates a federal statute or policy would require this Court to ignore the Supreme Court's decision in *McNary* and other cases that hold that the assertion of a federal civil rights violation under Section 1983 is an insufficient basis to subvert the Tax Injunction Act. If the federal policies against discrimination embodied in Section 1983 are not a sufficient basis to defeat the application of the Tax Injunction Act, this Court sees no reason why similar non-discrimination policies in the Fair Housing Act should warrant a different result.

Moreover, the Second Circuit has already declined to read *Moe* as broadening the instrumentality exception to the Tax Injunction Act simply because federal policies and interests are involved. *Federal Deposit Insurance Corp. v. State of New York,* 928 F.2d 56, 60 (2d Cir.1991). In *FDIC,* the plaintiff, a federally chartered corporation acting as a guarantor of ordinary commercial banks, sued in federal court to challenge a state tax levied on the commercial banks. The Second Circuit upheld the district court's dismissal of the case based on the Tax Injunction Act. After rejecting a claim by the FDIC that it was entitled to invoke the instrumentality exception to the Tax Injunction Act, the Second Circuit went on to find that the FDIC also could not rely on the fact that its suit implicated federal interests. The court stated:

> We agree that *Moe* should not be construed as having broadly expanded the federal instrumentality exception and, accordingly, we reject the FDIC's argument on this point. In this case, the connection between the government and the parties against whom the tax is assessed—commercial banking institutions—is far more tenuous than that between the Tribe and the United States in *Moe* ... Although the FDIC's activities may benefit commercial lending institutions, its basic purpose is to insure depositors' assets. If we were to allow the FDIC to invoke the federal instrumentality exception to the Tax Injunction Act in this case, we would be starting down a road leading toward use of the exception by any taxpayer whose operations were affected by congressional regulation. Taking this path would result in the erosion of the exception altogether. Therefore, we find that the Tax Injunction Act precludes the FDIC from pursuing this action in federal court.

928 F.2d at 60. The Court finds the decision in *FDIC* to be particularly instructive in rejecting the Government's "federal pol-

icies" exception. As the court noted, the FDIC's primary purpose—insuring the assets of depositors—is clearly a federal policy that the Government has an interest in protecting, *see e.g. Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.1982) (purpose of the FDIC is to promote stability and confidence in the nation's banks); 12 U.S.C. § 1811 *et seq.* Permitting the FDIC to sue to recover state taxes it claims were unlawfully withheld from it is unquestionably a suit that would protect and further the Federal Government's policies and interests. Thus, the Second Circuit's finding that the Tax Injunction Act applied despite the federal interest being asserted is contrary to the Government's claim in this case that an exception to the Tax Injunction Act exists for cases that seek to further federal policies. Moreover, the connection between the commercial banks and the FDIC, which the Second Circuit characterized as "tenuous," is far closer than the relationship between the Government and the citizens of Nassau County. Therefore, the Court finds that despite the "federal policies" implicated in this case, no exception to the Tax Injunction Act should be made.

In the absence of a recognized exception to the Tax Injunction Act applying to the Government's case, the Court is left with two competing statutes: one enacted in 1988, 42 U.S.C. § 3614, which permits the Government to commence an action in federal court to redress violations of the Fair Housing Act, and one in 1937, 28 U.S.C. § 1341, which prohibits district courts from enjoining the assessment and collection of state taxes. Nothing in the language or legislative history of Section 3614 would warrant permitting the Government to bring this case in federal court in the face of the Tax Injunction Act. Section 3614 of the Fair Housing Act was created by the Fair Housing Amendments Act of 1988, P.L. 100–430, 102 State. 1633 (1988), in an effort to "remov[e] barriers to the use of court enforcement by private litigants and the Department of Justice." *House Report No.* 100–711, *reprinted in*

1988 U.S.C.C.A.N. (102 Stat.) 2173, 2174. These amendments re-codified the provisions of the former 42 U.S.C. § 3613, which allowed the Attorney General to commence civil actions in cases involving a "pattern and practice" of discrimination, as the current Section 3614(a). In addition, the 1988 act added new provisions allowing the Attorney General to commence actions referred by the Secretary of Housing and Urban Development, 42 U.S.C. § 3614(b); to recover money damages on behalf of injured persons and civil penalties against violators, 42 U.S.C. § 3614(d)(1)(b) and (c); and allowing injured persons to intervene in actions filed by the Attorney General, 42 U.S.C. § 3614(e). The 1988 amendments also modified Title 28, sections 2341 and 2342 of the Judiciary Code, to provide for appellate review of administrative determinations by the Secretary of Housing.

In light of the comprehensive and constructive revision of the enforcement provisions of the Fair Housing Act in 1988, the Court is reluctant to believe that Congress also intended to restrict the application of the Tax Injunction Act, but neglected to explicitly do so. *Compare City and County of San Francisco v. Assessment Appeals Board,* 122 F.3d 1274, 1276 (9th Cir.1997) (the Tax Injunction Act, passed after the statute granting federal jurisdiction over federal reserve banks, did not ban federal court jurisdiction over such cases since the Tax Injunction Act did not expressly indicate an intent to repeal already existing law.)

The questionable validity of Nassau County's controversial and archaic tax assessment system will, with reasonable certainty, be adjudicated in the near future in New York State Supreme Court, Nassau County, *Coleman et al. v. Seldin, et al.,* Index no. 97–30380. The Court's decision today does not leave the Government without a forum to pursue its own allegations and join forces with those attacking the Nassau County assessment system. Another section of the Fair Housing Amendments Act of 1988 allows the Government

to intervene in a pending state court action. 42 U.S.C. § 3613(e). That section states:

Upon timely application, the Attorney General may intervene in [a private action in state or federal court], if the Attorney General certifies that the case is of general public importance. Upon such intervention the Attorney General may obtain such relief as would be available to the Attorney General under section 3614[d] of this title in a civil action to which such section applies.

42 U.S.C. § 3613(e) (probable error in original corrected). Thus, by intervening in the pending action in state court, the Government can obtain all of the relief it seeks here without running afoul of the jurisdiction limits placed on this Court by Congress.

## CONCLUSION

Therefore, the Court concludes that the instant action is not subject to any of the exceptions to the Tax Injunction Act. There is currently pending an action in state court in which the Government may intervene that offers a "plain, speedy, and efficient remedy." Accordingly, this Court lacks jurisdiction over this case by operation of the Tax Injunction Act, 28 U.S.C. § 1341. The Defendant's motion to dismiss the complaint is GRANTED. The Clerk is directed to close the case.

**SO ORDERED**